## The Union Pacific Railway Company

*v.*

## The Chicago, Rock Island and Pacific Railway Co.

*Filed at Ottawa November 9, 1896.*

1. Res judicata—*a judgment settles question involved, though not specifically named.* A question which is involved within the issues of a former controversy is conclusively settled, as between the parties, by the decision in that controversy, whether the court, in its judgment, passed specifically on that particular question so involved or not.

2. Same—*when judgment involving the validity of a contract is binding.* A judgment in a suit in which one side contended that a trackage agreement between railroad companies existed and was binding as an entirety, and the other side denied the validity of the contract or any of the terms or conditions thereof, is conclusive in a subsequent suit of the power of one of the companies to make such agreement, whether as lessor or lessee.

3. Appeals and errors—*when overruling demurrer to good replications is not error.* The overruling of a demurrer to replications to pleas is not material and reversible error where the defendant has the benefit of the defense stated in such pleas under other pleas filed in the case.

4. Same—*errors not available on appeal unless exceptions thereto are preserved.* Error in refusing to allow a motion for leave to withdraw a demurrer to a replication and to file a rejoinder to the replication is not available on appeal, where no exception to the ruling on the motion is preserved by bill of exceptions.

5. Evidence—*of experts not admissible as to cost of keeping tracks in repair.* Expert evidence that the cost of keeping a railroad in good repair is less when the traffic is less is inadmissible in mitigation of damages for breach of a trackage agreement between railroad companies, which provides that when the compensation for mileage shall be less than would be produced by the operation of a certain number of trains per day the difference between such compensation and that produced by such operation shall be paid.

6. Landlord and tenant—*when covenant can be maintained on lease.* Covenant can be maintained on an absolute agreement to pay rent where there is a demise and the lessor is not in fault in preventing actual enjoyment, although the tenant has not taken possession of or used the demised premises.

*U. P. Ry. Co.* v. *C., R. I. & P. Ry. Co.* 57 Ill. App. 430, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. SAMUEL P. McCONNELL, Judge, presiding.

WILLIAM E. MASON, (JOHN M. THURSTON, W. R. KELLY, and JOHN N. JEWETT, of counsel,) for appellant:

In addition to the original charter of the appellant, and amendments thereto, viz., the act of Congress of July 1, 1862, (12 Stat. at Large, 489,) and the act of Congress of July 2, 1864, (13 Stat. at Large, 356,) the following cases, wherein certain provisions of the charter of the Union Pacific Railway Company have been construed, are referred to:   *Railroad Co.* v. *Hall*, 91 U. S. 343; *Railway Co.* v. *United States*, 117 id. 355; *Thomas* v. *Railroad Co.* 101 id. 71; *Railroad Co.* v. *Railroad Co.* 118 id. 290; *Railway Co.* v. *Railway Co.* 130 id. 1; *Transportation Co.* v. *Car Co.* 139 id. 24; *Davis* v. *Railroad Co.* 131 Mass. 258.

The circuit court erred in overruling the demurrers of appellant to the several replications of *res judicata* filed by appellee to sundry pleas of appellant, and each of them. *Kitson* v. *Farwell*, 132 Ill. 327; *Davis* v. *Kennedy*, 105 id. 300; *Cromwell* v. *County of Sac*, 94 U. S. 351; *Duchess of Kingston's case*, 3 Smith's L. C. 1998; *Weber* v. *Mick*, 131 Ill. 520; *Arnold* v. *Arnold*, 17 Pick. 4; *Chicago* v. *Cameron*, 120 Ill. 447; *McCartney* v. *Osborne*, 118 id. 403; *Bentley* v. *O'Bryan*, 111 id. 53; *Woodgate* v. *Fleet*, 44 N. Y. 11; 1 Greenleaf on Evidence, secs. 524-533; *Umlauf* v. *Umlauf*, 117 Ill. 580; *Riverside Co.* v. *Townshend*, 120 id. 9; *King* v. *Townsend*, 141 N. Y. 358.

Under the decisions of the Nebraska court the provisions of the agreement of May 1, 1890, would seem to be void.   *State* v. *Scott*, 22 Neb. 628; *Deitrichs* v. *Railroad Co.* 13 id. 361; *Gottshalk* v. *Railroad Co.* 14 id. 359; *State* v. *Railroad Co.* 27 id. 699; *Trester* v. *Railway Co.* 23 id. 242.

ROBERT MATHER, for appellee.

Mr. JUSTICE BAKER delivered the opinion of the court:

This is an action of covenant brought in the circuit court of Cook county by the Chicago, Rock Island and Pacific Railway Company, appellee, against the Union Pacific Railway Company, appellant, and wherein appellee recovered verdict and judgment against appellant for $85,481.86 damages, which judgment was afterward affirmed in the Appellate Court for the First District.

The action is for the recovery of certain rentals accruing under certain articles of agreement under seal, bearing date May 1, 1890, and executed by the appellant railway company, the appellee railway company, the Omaha and Republican Valley Railway Company, the Salina and Southwestern Railway Company and the Chicago, Kansas and Nebraska Railway Company. The contract is quite voluminous, and but comparatively few of its provisions need be set out or even specially referred to. It may be well to first make reference to the preamble, for although it is not the province of the recitals therein to be used primarily for the purpose of construing the operative parts of the contract itself, yet the matters of fact set forth therein may properly be regarded for the explanations they afford of the reasons upon which the transaction is founded. It is recited that appellant owns and operates two designated and described lines of railroad, and also operates, as lessee, several designated auxiliary and branch lines; that the Omaha and Republican Valley Railway Company owns one of the mentioned railroads operated by appellant; that the Salina and Southwestern Railway Company owns another of the roads designated as being operated by appellant; that appellee owns and operates a railroad which extends from Chicago to Council Bluffs, and also to St. Joseph, and that it operates, as lessee, the railroad of the Chicago, Kansas and Nebraska Railway Company and designated portions of the Hannibal and St. Joseph rail-

way and of the railway of the Pacific company, and that
the Chicago, Kansas and Nebraska Railway Company
owns a certain described railroad, and is lessee of cer-
tain other mentioned railroads and parts of railroads,
"all of which lines are operated by the Rock Island com-
pany under a lease of all the railways and railway prop-
erty owned by or leased to the Kansas company, for the
term of 999 years, commencing on the 15th day of May,
1886;" and the various connections made by these several
lines of railroad are also recited in the preamble. The
preamble then recites:

"The Rock Island company proposes to extend its rail-
way from the present terminus thereof, at the city of
Council Bluffs, to a connection with the railway of the
Kansas company at the city of Beatrice, in the State of
Nebraska. The parties hereto believe that the interests
of all will be promoted by incorporating in the proposed
extension a portion of the main tracks of the Pacific
company in the cities of Council Bluffs and Omaha, the
bridge over which said tracks pass across the said Mis-
souri river between said cities, and a portion of the rail-
way of the Republican Valley company between a point
at or near the north boundary of the city of Lincoln to a
point at which it connects with the tracks of the railway
of the Kansas company at the city of Beatrice, by a lease
by the Rock Island company to the Pacific company of
the joint use and possession of the railway owned by the
Kansas company, extending from the city of McPherson,
in the county of McPherson and State of Kansas, to the
point where the Hutchinson, Oklahoma and Gulf railroad
connects with the railway of the Kansas company west
of the Arkansas river, in the city of South Hutchinson;
and a lease by the Rock Island company to the Pacific
company of the right to operate trains over the railway
which the Rock Island company proposes to construct and
operate between the cities of South Omaha and Lincoln:
Therefore, in consideration of the premises and of the

mutual covenants and agreements hereinafter set out and contained, the parties above named have severally entered into covenants, promises and agreements with each other, as follows."

Section 1 of article 1 of the contract made provision for the letting by the Pacific company to the Rock Island company, for the term of 999 years, of trackage, etc., between Council Bluffs and South Omaha, including use of the bridge across the Missouri river, and for compensation to be paid therefor. Section 2 made provision for the letting by the Pacific company to the Rock Island company, for a like term of years, of trackage, etc., on the Republican Valley railway, from Lincoln to Beatrice. Paragraph 1 of section 3, paragraph 1 of section 4 and paragraph 1 of section 5, of said article 1, contain the provisions of the contract upon which the declaration in this suit counts. Said provisions are as follows:

"Sec. 3.—(1.) The Rock Island company hereby lets the Pacific company into the full, joint and equal possession and use of all its tracks, buildings, stations, sidings and switches, forming a part of the line of railway owned by the Kansas company, between the points at which said railway is intersected at or near the city of McPherson, in the county of McPherson, in the State of Kansas, to the point where it is intersected by the tracks of the Hutchinson, Oklahoma and Gulf railroad company west of the Arkansas river, in the city of South Hutchinson, in the county of Reno and State of Kansas, including all and every part of the railway leased and demised, with the appurtenant property, between the points aforesaid, and all the improvements and betterments thereon, and additions thereto, which may be jointly used by the parties, excluding the yards and depots of the lessor at the cities of McPherson and Hutchinson, but including main and passing tracks in the last named city, for the term of 999 years, commencing on the first day of May, 1890; for which possession and use the Pacific company cove-

nants, promises and agrees to pay to the order of the
Rock Island company rental to be computed in the man-
ner hereinafter provided."

"Sec. 4.—(1.) The Rock Island company hereby lets,
leases and demises to the Pacific company for the term
of 999 years, commencing on the first day of October,
1890, the right and privilege to move and operate over
the tracks of the railway it proposes to construct between
the cities of South Omaha and Lincoln, in the State of
Nebraska, from the point where the tracks of the par-
ties shall intersect in South Omaha to that at which
they shall intersect near to the boundary line of the
city of Lincoln, its passenger and freight trains, includ-
ing engines and cars of all classes, in the transaction
of its business as a common carrier, and to use in such
movement the necessary side and passing tracks and
structures between the points above named; and it prom-
ises and agrees to furnish and supply the cars and engines
of said Pacific company, when moved on said railway,
with water, and to deliver, on the requisition of said
company, coal for use on such engines and cars of said
company while on its tracks; to keep and maintain said
tracks and appurtenances thereto in good repair and con-
dition during the continuance of said term, and to accept
as full compensation for such use of its tracks, and for
all water and coal which it shall furnish to said Pacific
company, the sum of twenty-five (25) cents per mile for
each and every mile over which any passenger train of
said last named company may be moved, and thirty (30)
cents per mile for each and every mile over which any
freight train of said company may be moved on said
track; the actual cost of the coal delivered on such requi-
sition, on the tenders and cars of such Pacific company,
and fifty (50) cents per tank for each and every tank of
water taken by said company; which compensation the
Pacific company promises and agrees to pay, on state-
ments of account to be made monthly; and when the

compensation in any year for mileage shall be less than would be produced by the operation of two passenger and two freight trains per day each way over the entire length of the main track of the Rock Island company between the cities of South Omaha and Lincoln, it, the Pacific company, will pay to the order of the Rock Island company, in addition to the compensation for actual mileage, the difference between such compensation and that which would be produced by the operation of two freight and two passenger trains each way daily during the entire year."

"Sec. 5.—(1.) The parties to the leases set out and contained in sections 2 and 3 of this article will pay to each other rental for the possession and use of the leased and demised property, as follows: The Rock Island company will pay to the Pacific company, monthly, for the possession and use of its railway and appurtenant property at and between Lincoln and Beatrice, in the State of Nebraska, the sum of the following amounts: (1) An amount equal to one-twelfth of two and one-half per centum of the value of the main track leased and demised, which value it is agreed is fifteen thousand (15,000) dollars per mile; (2) an amount equal to the proportion of the cost and expense actually, necessarily and reasonably incurred and paid for maintaining, renewing, repairing and supplying with water the railway leased and demised, salaries of officers and employees whose duties pertain to the joint use thereof, and for the payment of taxes and assessments legally laid or levied on such property during the month for which such rental is paid, which proportion shall be to the aggregate of the sums so paid as the number of wheels per mile run during such month by the Rock Island company over said leased and demised railway bears to the whole number of wheels operated over said leased property per mile during the same period. The Pacific company shall pay to the Rock Island company for the possession and use

of the railway of the Kansas company between and at McPherson and South Hutchinson, a rental which shall be computed in the manner prescribed by this paragraph. Each of said parties will accept the rental thus computed, when paid, as full compensation for the possession and use of the railway by it leased and demised."

The declaration consists of three special counts. The contract of May 1, 1890, is set out in full in the first count, and by reference to said first count it is also set out in the second and third counts. Two breaches are assigned in the first count. The first breach is, the failure of defendant to pay the plaintiff rental up to July 31, 1892, amounting to $19,048.86, for use of plaintiff's railway between McPherson and South Hutchinson. The second breach is, the failure of defendant to pay to plaintiff $69,670.96 for the privilege of running its cars, etc., over plaintiff's road from South Omaha to Lincoln, up to July 31, 1892. The second and third counts, taken together, substantially duplicate the first count.

Twenty-five pleas to the declaration were interposed, and subsequently, by leave of court, two additional pleas were filed. The first plea was *non est factum*, not sworn to, upon which issue was taken. The second plea was, that the contract was executed without authority of defendant. Pleas 3, 4 and 5 were pleas of *ultra vires* of defendant, setting out the corporate organization of the Union Pacific Railway Company under certain acts of Congress and the specific purposes of that organization, the limitation of its powers to the construction and operation of specific lines of railroad and telegraph, and the want of authority on the part of the company to enter upon and operate other lines of railroad than those thus specified, and averring that the new line of road proposed to be constructed by the Rock Island company between South Omaha, in Nebraska, and the line of the Kansas company between McPherson and South Hutchinson, in Kansas, were no part of the lines of road it was author-

ized to construct or operate. To these pleas averring the invalidity of the contract plaintiff filed its replication of *res judicata,* setting up the record of an action in equity to compel specific performance of the contract brought by plaintiff against defendant in the district court of Nebraska, and thence removed to the circuit court of the United States, where a decree was rendered in plaintiff's favor as prayed, specifically finding that the contract was the valid obligation of the parties thereto. Pleas 6, 7, 8, 9, 10, 11, 13, 14, 15, 16, 17, 18, 22 and 23, each, either set up by way of defense *ultra vires,* either of plaintiff or of defendant, or else alleged the invalidity of the contract for other stated cause, and to each of said pleas a like replication of *res judicata* was filed. To all the replications of *res judicata* demurrers were overruled, and defendant abided by its demurrers.

Demurrers were sustained to the 12th and 21st pleas, and defendant stood by said pleas. The 19th and 20th pleas set up the failure of the plaintiff to complete its railway between South Omaha and Lincoln on or before the first day of December, 1890, etc. The replications to these pleas alleged an extension of time, etc., and demurrers to said replications were overruled, and defendant abided by its demurrers. The 24th plea was, that the plaintiff did not, on or before October 1, 1890, construct and put in condition for the operation of passenger and freight trains upon and over the same, its proposed railroad between South Omaha and Lincoln. The replications to the plea were, first, the execution of a new agreement, extending the time for completion of the road; and second, *res judicata.* To the first of these replications the rejoinders were, first, *non est factum;* and second, that the railroad was not completed by January 1, 1891, and issue was taken on these rejoinders. To the second replication the rejoinders were, first, *nul tiel record;* and second, that the covenants mentioned in the pleas were not the same covenants mentioned in the replication, and

issues were taken on these rejoinders.    Plea 25 was, that plaintiff did not, on or before December 1, 1890, construct and put in condition for the operation of passenger and freight trains upon and over the same, the proposed line of railroad between South Omaha and Lincoln.    Similar replications and rejoinders were interposed, and similar issues formed, as in respect to plea 24.    The additional plea was a plea of *ultra vires* of defendant, and the demurrer to a replication of *res judicata* was overruled, and defendant stood by its demurrer.

It is urged that the circuit court erred in overruling the demurrers of the appellant to the several replications of *res judicata* filed by appellee to sundry pleas of appellant; that the record set out in said several replications is insufficient, in law, to estop the appellant from pleading and insisting upon the defense of *ultra vires* as to those provisions of the agreement of May 1, 1890, relied upon by appellee as the basis of this action, and the validity of which is put in issue by the pleas of *ultra vires.* The contention is, that the purpose of the proceedings of the Nebraska courts, as set out in the replications, was to obtain an injunction by the Rock Island company against the Pacific and Republican Valley companies to prevent the defendant companies from interfering with the right of the Rock Island company, as *lessee* under the agreement of May 1, 1890, to restore and maintain its railroad connections with the Union Pacific and Republican Valley lines of railroad; that the only parts of the contract of May 1, 1890, involved in that proceeding rest entirely and exclusively upon the covenants or grants of the Pacific company *as a lessor*, and in nowise involve its duties and obligations under other separate, distinct and independent parts of the same agreement which relate to its duties and obligations *as a lessee;* and that the scope and effect of the proceedings and adjudication in that case did not involve the legal capacity of the Union Pacific Railway Company to lease and operate lines of

railroad outside of its own, but simply the power of that company to grant, by way of lease or agreement, a right or privilege to the Rock Island company to use the surplus capacity of its tracks and depot facilities, and whether the lease, agreement or license was authoritatively executed in the exercise of a power actually conferred.

In order to ascertain what was the object of the proceeding instituted by the Rock Island company against the Union Pacific company and the Republican Valley company in the State court of Nebraska, and afterwards transferred to the United States court for the district of Nebraska, and the scope and effect of the decree therein entered by Mr. Justice Brewer, it will be necessary to examine the record set out in the replications in this suit, for the purpose of seeing what matters were by the petition and answers in that case submitted to the decision of the equity court in Nebraska, and what the decree of that court was in respect to such matters.

A copy of the agreement of May 1, 1890, was annexed to and expressly made a part of the petition. The petition then made averments of the substance of the granting parts of that agreement, and these averments were as full and complete with reference to those sections of the contract granting to the Union Pacific company the right to use the tracks of the Rock Island company, as with reference to the sections in which the Union Pacific is lessor and the Rock Island lessee. The entry of the Union Pacific upon and its use of the line of the Rock Island from McPherson to Hutchinson were alleged. It averred "that after the execution of said contract as aforesaid, plaintiff, relying upon the performance of said contract upon the part of defendants, and each of them, in good faith constructed its proposed railway from South Omaha to Lincoln, aforesaid, and acquired a large amount of land in Omaha and South Omaha adjacent to the railway of the Union Pacific Railway Company, and in constructing said railway and in acquiring said land

this plaintiff expended more than $1,000,000." Then followed averments as to the preparation of joint schedules for the operation of trains; the destruction by defendant, on January 4, 1891, of the connections between the tracks of the plaintiff and of the defendant at Council Bluffs, South Omaha, Lincoln and Beatrice; the refusal of the Union Pacific to permit the connections to be restored; the refusal to permit the Rock Island to use any of the railways the right to use which it had acquired by the agreement; and that "the defendants, and each of them, have at all times since the fourth day of January, 1891, wrongfully refused to respect said contract or to observe any of the terms or stipulations thereof." The petition alleged that "plaintiff has kept and performed all the conditions of said contract on its part," and it concluded with the prayer: "Wherefore said plaintiff prays judgment and decree of this court that said contract be carried into execution, and that the defendants, and each of them, specifically perform the stipulations therein contained by them, and each of them, to be kept and performed, this plaintiff hereby offering to perform all the stipulations in said contract contained on its part to be kept and performed," etc., "and that plaintiff may have all such other and further relief in the premises as it may, in equity and good conscience, be entitled to."

Among other things set up in the answer, it was said that "defendants deny that said supposed contract was ever authorized, entered into or executed by either of the defendants in its corporate capacity, or in such a manner as to bind them, or either of them, to a performance of the terms and conditions thereof." In paragraph 9 of the answer the possession and use by the Pacific company of the line between McPherson and Hutchinson are admitted, but it is further stated that it has since surrendered and turned over all of the premises, properties, rights and privileges which it had assumed to possess, use and enjoy under the terms and conditions

of the supposed contract. It is also stated in said paragraph that on January 12, 1891, the Pacific company notified the Rock Island company of its purpose to make such surrender, and it is therein said: "A copy of the notice served upon the said complainant with respect thereto is hereto attached, and referred to for greater certainty." The notice so referred to is as follows:

"*To the Chicago, Rock Island and Pacific Railway Company*— You are hereby notified that the Union Pacific Railway Company is advised by counsel that those certain articles of agreement made and entered into on the first day of May, in the year of our Lord one thousand eight hundred and ninety, by and between the Union Pacific Railway Company, the Omaha and Republican Valley Railway Company, the Salina and Southwestern Railway Company, the Chicago, Rock Island and Pacific Railway Company and the Chicago, Kansas and Nebraska Railway Company, were and are in excess of the powers and statutory authority of the Union Pacific Railway Company and of the Omaha and Republican Valley Railway Company to enter into, execute or perform. You are therefore notified that the Union Pacific Railway Company has decided to, and hereby does, disaffirm the said agreement and all of the terms and conditions therein contained; that it refuses to perform and execute the same, and it hereby surrenders to you all the road, property, rights, privileges, uses and appurtenances pretended to be conveyed to it thereunder. And it hereby further notifies you that it has abandoned and hereby surrenders to you all that certain, full, joint and equal possession and use of all tracks, buildings, stations, sidings and switches described in paragraphs 1 and 2, section 3, article 1, of said articles of agreement, and it hereby tenders and restores to you as complete and perfect restoration, ownership and operation of all said premises as you were possessed of prior to the execution of said contract. It hereby further notifies you that it does not now, and will not hereafter, claim any right, title, interest, use or connection with or operation of any property pretended to be leased, demised or transferred to it by you or by any other parties to said contract.

THE UNION PACIFIC RY. CO.,

By W. H. HOLCOMB, *Ass't Gen'l Manager.*"

In paragraph 14 defendants "deny that the refusal of the defendants to comply with the terms and conditions of the said supposed contract is contrary to equity and

good conscience or that they have done any irreparable injury to the complainant, and they allege the fact to be, that for any injury sustained by the complainant by reason of the refusal of the respondents, or either of them, to submit to the execution of said supposed contract and to enter upon the performance of the terms and conditions thereof, the complainant has an adequate remedy at law." In paragraph 18 it is said that "the question as to whether or not said supposed contract was a valid and subsisting agreement between the parties, and as to whether or not it was properly executed, and as to whether or not the parties thereto had a legal right to enter into the terms and conditions of the same, was and is a question of statutory construction and of the application of the principles of the law of the land, and was and is as well known to the officers, agents and attorneys of the complainant as to those of the defendant; and it alleges that both parties to this action, in entering upon the supposed execution of said supposed contract, were bound to know the full extent and meaning of all of said several acts of Congress and of the law of the land applicable to the terms and conditions contained in said supposed contract; and defendant says that neither of said parties can complain by reason of any act or thing which has been done in the way of a partial performance of the terms and conditions of said supposed contract, or by reason of the refusal of either party to further continue the performance thereof, in case it shall be determined that the said contract, as far as the defendant is concerned, was and is *ultra vires*, and its supposed execution was entered into without authority of law." Paragraph 16 of the answer alleges the fact to be, that the Pacific company has not and did not have any right, power or authority, under and by virtue of the several acts of Congress creating it, to enter into or execute the supposed contract attached to the complainant's bill of complaint. In paragraph 20 it is said, "no power is conferred upon

this defendant to enter into any such supposed contract as the one attached to the complaint," and further said, "the alleged execution of the said supposed contract by the officers of this defendant was in direct violation of the requirements of the said several acts of Congress." In the last paragraph (22) of the answer it is said, "defendants are not bound to recognize the validity of said contract or any of the terms and conditions thereof."

Numerous other denials and statements similar to those we have specially referred to are to be found in the answer. Besides this, there was in the Federal court an amendment of the petition, the object of which amendment was to reform the contract of May 1, 1890, with reference to the covenants relating to the line from South Omaha to Lincoln. That line was one of the lines of which, under the contract, the Pacific company was lessee, and one of the lines for the rental of which the present action is prosecuted. In the answer of the defendants to said amendment they stated their belief that the allegations in said amendment were true, and they joined in asking that the court would make such finding and decree in the premises "as will make the contract read according to the original intention and agreement of the parties."

It appears from the allegations of the replications herein, that the findings and decree of the circuit court of the United States for the district of Nebraska, in the matter of said petition in equity, were, in part, as follows:

"1. That the contract entered into by and between the Union Pacific Railway Company, the Omaha and Republican Valley Railway Company, the Salina and Southwestern Railway Company, the Chicago, Rock Island and Pacific Railway Company and the Chicago, Kansas and Nebraska Railway Company, bearing date May 1, A. D. 1890, (a copy of which is attached to the petition or bill of complaint in this cause,) should be reformed by substituting in the place of the word 'provisions,' in the last sentence of section 7 of article 3 thereof, the word 'pro-

visos,' which was written in the contract as settled by
and between the parties, and changed by inadvertence
in printing the same.

"2. That said contract, as so reformed, is the valid
obligation of the parties thereto, and should be performed
in good faith by each of them.    *    *    *

"3. That the defendants, the Union Pacific Railway
Company.and the Omaha and Republican Valley Railway
Company, are commanded, severally, to specifically per-
form, keep and observe the several covenants, promises
and agreements in said contract set out to be by them,
jointly or severally, observed, kept or performed.    *    *    *

"5. That nothing in this decree contained shall operate
to estop any party hereto from recovering against an-
other party or parties, by appropriate proceedings in law
or equity, the compensation to which it is now or may be
hereafter entitled for the use of any of the railway and
appurtenant property between and at Council Bluffs and
South Omaha, between and at South Omaha and Lin-
coln, between and at Lincoln and Beatrice, and between
McPherson and South Hutchinson, or from recovering
in such proceedings damages which it has sustained or
may sustain because of any breach or violation of said
contract."

The legal effect of the averments of the petition in
the Nebraska cause, with reference to those parts of the
agreement of May 1, 1890, which are in issue in this case
under the pleas of *ultra vires* and other pleas averring the
invalidity of the contract, was to allege the existence,
validity and binding force of those parts of the agree-
ment.    The effect of the averments of the answer with
reference to those parts of the agreement was to admit
their formal or technical execution, and to seek to avoid
their effect upon the ground of a surrender by the Union
Pacific company to the Rock Island company of the rights
secured by those portions of the agreement to the former,
for the reason that the Union Pacific company had no

power or authority to enter into or perform those portions of the agreement. This formed an issue between the parties as to the validity and binding effect of the parts of the·contract here in question, as well as in regard to the validity of the covenants and grants of the Pacific company as a lessor. The contention on one side was, the existence and binding force of the agreement as an entirety; and the contention on the other .side was, a denial of "the validity of said contract or any of the terms or conditions thereof." The petition prayed that "said contract be carried into execution, and that the defendants, and each of them, specifically perform the stipulations therein contained by them and each of them to be kept and performed;" and the answer denied the right to such specific performance.

It was decreed by the Federal court that the contract of May 1, 1890, is the valid obligation of the parties thereto and should be performed in good faith by each of them, and the Union Pacific Railway Company was commanded to specifically perform, keep and observe the several covenants, promises and agreements in said contract set out to be by it observed, kept or performed. Certain of the pleas in the suit at bar to which there were replications of *res judicata* are based upon constitutional or statutory provisions of the States of Nebraska and Kansas, respectively. It is just as impossible that the Federal court could have rendered the decree that it did without necessarily finding that the Rock Island company was authorized by the laws of Nebraska or Kansas, as the case may be, to do the things which the decree gave it the right to do, as it is for that court to have rendered the decree commanding the Pacific company specifically to perform the contract without necessarily finding that the latter company had the power, under the laws of the United States and of the States where the several covenants of the contract were, respectively, to be performed, to perform them.

It follows from what we have said, that all the issues tendered in the pleas to which replications of *res judicata* have been sustained were included within the issues raised and decided in the suit determined in the Federal court in Nebraska. The question there litigated and determined was the validity of the contract of May 1, 1890, and the adjudication established its validity,—not the validity of merely some parts of that agreement, but the validity of the entire contract. This conclusion is supported by the decisions of this court in *Hanna* v. *Read*, 102 Ill. 596, *Kelly* v. *Donlin*, 70 id. 378, *Ruegger* v. *Indianapolis and St. Louis Railroad Co.* 103 id. 449, *Riverside Co.* v. *Townshend*, 120 id. 9, *Harmon* v. *Auditor of Public Accounts*, 123 id. 122, *Stickney* v. *Goudy*, 132 id. 213, and numerous other cases. The rule deducible from the cases in this State is, that a question which is involved within the issues of a former controversy is conclusively settled, as between the parties, by the decision in that controversy, whether the court in its judgment passed specifically on that particular question or not.

From the decree of the circuit court of the United States for the district of Nebraska in the case of the Rock Island company against the Union Pacific company *et al.* an appeal was taken to the circuit court of appeals, where the decree was affirmed. A further appeal was then taken to the Supreme Court of the United States. Since the submission of this case to this court the Federal Supreme Court has rendered a decision affirming the decree. (*Union Pacific Railway Co.* v. *Chicago, Rock Island and Pacific Railway Co.* 163 U. S. 564.) In the opinion of the Supreme Court it is, among other things, said: "But it is earnestly contended that the Pacific company had no power under its charter, as a Federal corporation, to operate any other line of road than those lines which it was specifically authorized by Congress to construct, and that it was prohibited by the constitution and laws of Nebraska from doing so, and therefore that it could not obligate

itself to use, and to pay to the Rock Island company compensation for the use of, the road between South Omaha and Lincoln. * * * The eighth section of the eleventh article of the constitution of that State provided that no railroad corporation of any other State or of the United States doing business in Nebraska should be entitled to exercise the right of eminent domain, or have power to acquire the right of way or real estate for depot or other uses, until it should have become a corporation of the State pursuant to the constitution. But we do not see what that provision has to do with this question. The stipulation of the contract relating to the use of the Rock Island tracks between South Omaha and Lincoln by the Pacific company did not embrace the acquisition of right of way or real estate or the exercise of the power of eminent domain by the latter. By the contract the Rock Island company gave the Pacific company 'the right and privilege to move and operate its trains over the tracks,' and nothing more, and it was provided that the Pacific company should do no business at intermediate points. The Pacific company was to run its trains over the Rock Island tracks forty-five miles, and it agreed to pay a fair compensation for doing so. It was perfectly competent for the Pacific company to contract to deliver at Lincoln freight and passengers taken up at Omaha, and in carrying out such contract it could make delivery in car-loads as well as in small parcels. It follows that its cars might be run through, and the fact that under this contract the Pacific company would haul its cars with its own engines amounts to no more than a mere method of doing the business; and as, when it contracts for deliveries beyond its own line, it must pay the connecting company for its services, that compensation might be fixed by the parties upon any basis they agreed to. Here it agreed to pay a certain sum per mile for the mileage over which its trains ran, and the difference between that and any other mode of payment did not go to the powers of

the company.   Where a corporate contract is forbidden by a statute or is obviously hostile to the public advantage or convenience, the courts disapprove of it; but when there is no positive prohibition, and it is obvious that the contract is one of advantage to the public, the rule is otherwise.   As remarked in *Jacksonville Railway Co.* v. *Hooper*, 160 U. S. 514:  'Although the contract powers of railroad companies is to be restricted to the general purposes for which they are designed, yet there are many transactions which are incidental or auxiliary to its main business, or which may be useful in the care and management of the property which it is authorized to hold, and in the safety and comfort of the passengers which it is its duty to transport.   Courts may be permitted, where there is no legislative prohibition shown, to put a favorable construction upon such exercise of power by railroad companies as is necessary to promote the success of the company within the powers of its charter and to contribute to the comfort of those who travel thereon.'   And that principle is applicable to the transportation of through freight and passengers over connecting lines. Under the laws of Nebraska railroad companies are clothed with ample power to make leases or any agreements for their common benefit consistent with and calculated to promote the objects for which they are created. (Comp. Stat. Neb. 1887, 248, chap. 16, sec. 94.)   There is nothing in the charter of the Pacific company that prohibits such an arrangement as this in controversy, unless by implication, and as by it the public interest was subserved, that company reached its own lines by a shorter route and accommodated its own through freight and travel, we are not prepared to hold that it was invalid. These observations also apply to the clause of the contract in respect to the road between McPherson and Hutchinson; but it should be added that that reach of road was held and operated by the Kansas company, which was a Kansas corporation.   The Union Pacific Rail-

way Company was formed by the consolidation of the Union Pacific Railway Company, (a Federal corporation,) the Denver Company, (a Colorado corporation,) and a corporation originally named the Leavenworth, Pawnee and Western railway, afterwards called the Union Pacific railway, Eastern Division, and lastly the Kansas Pacific railway. The latter company, by its first name, was incorporated under the laws of the territory of Kansas, and upon the admission of Kansas into the Union became a corporation of the State. The acts of Congress of 1862 and 1864 clothed it with new franchises, but did not deprive it of its powers as a State corporation, which could be exercised by the consolidated company in Kansas so far as not in derogation of its Federal powers. The Kansas corporations were duly empowered to enter into leases and the like by the State laws. Gen. Stat. Kansas, chap. 23, sec. 112, vol. 1, 443." ·

Our conclusion is, that there was no error in overruling the demurrer to the several replications of *res judicata.*

It is urged there was error in the order of the Cook circuit court overruling the demurrer of appellant to the replications of appellee to pleas 19 and 20, because the pretended agreements set out in said replications are not, nor is either of them, under seal, and therefore cannot be availed of as modifications of the original agreement of May 1, 1890. If we assume that it was technical error to overrule said demurrer, yet it worked no injury to the rights or interests of appellant. Substantially the same defenses set up in pleas 19 and 20 were also pleaded in the amended pleas 24 and 25, the first of these latter pleas setting up that appellee did not on or before October 1, 1890, and the other that it did not on or before December 1, 1890, construct and put in condition for operation the contemplated railroad from South Omaha to Lincoln; and, as we have already seen, upon the issues based, by means of appropriate replications and rejoinders, on said amended pleas 24 and 25, appellant had the

full benefit of the defenses alleged in pleas 19 and 20, and so the overruling of the demurrer, even if erroneous, was not material and reversible error.

The alleged error of the court in refusing to allow the motion of appellant for leave to withdraw its demurrer to the replication to the eighth and ninth amended pleas and the first additional plea, and to file rejoinders to said replications, is not properly before this court for decision, because no exception to the ruling of the court on the motion was preserved by a bill of exceptions. *Snell* v. *Trustees*, 58 Ill. 290; *Earll* v. *People*, 73 id. 329; *Burns* v. *People*, 126 id. 282.

It is claimed that the trial court erred in refusing to admit certain proffered testimony in mitigation of damages. The excluded evidence was that of experts, tending to show that the less the traffic over a railroad line the less will be the cost of keeping the property in good repair and condition. The contention is, that the entire burden and expense of keeping the road in repair was, by the terms of the agreement, cast upon appellee, and that since appellant did not use the road at all there was a saving in expense of repairs. It may well be that testimony of the character indicated would in some cases be admissible in evidence. But here the damages are liquidated and fixed by the agreement of the parties themselves. The provision of the contract in regard to compensation for the use of the line between South Omaha and Lincoln is: "When the compensation in any year for mileage shall be less than would be produced by the operation of two passenger and two freight trains per day each way over the entire length of the main track of the Rock Island company between the cities of South Omaha and Lincoln, it, the Pacific company, will pay to the order of the Rock Island company, in addition to the compensation for actual mileage, the difference between such compensation and that which would be produced by the operation of two freight and two pas-

senger trains each way, daily, during the entire year."
The rule is that covenant can be maintained on an agreement which is absolute to pay rent, where there is a demise and the lessor is not in fault in preventing actual enjoyment, although the tenant has not taken possession of or used the demised premises.

The rulings of the trial court upon the instructions were in conformity with the views we have expressed.

There is no error in the record for which the judgment should be reversed. The judgment of the Appellate Court is affirmed.                              *Judgment affirmed.*