# Buck *v.* McKeesport, Appellant.

*Evidence—Photographs—Negligence.*

1. Photographs to be competent evidence should be properly and carefully taken so that they will truthfully represent the place or the object. Before they are admitted in evidence there should always be preliminary proof of care and accuracy in the taking of them, and of their relevancy to the issue before the jury.

2. In an accident case photographs taken three months after the accident, and showing a pile of stones which was alleged to have been the

cause of the accident, are not admissible in support of the plaintiff's case, where a witness for the plaintiff testifies that the pile of stones, which was alleged to have caused the accident, was removed three or four days after the occurrence.

*Negligence—Damages—Loss of earning power.*

3. In an action by a woman to recover damages for personal injuries it is not proper to admit evidence that prior to her marriage, which had taken place twenty-three years before the accident, plaintiff was engaged at labor and received a stated compensation for her services.

*Practice, C. P.—Trial evidence.*

4. It is the practice to permit counsel to recall a witness after a motion for a nonsuit to testify to something that has been inadvertently overlooked or omitted, but not to start anew to make out the case in chief. The matter, however, is largely discretionary with the trial court.

*Appeals—Evidence—Review—Reversal—Venire facias de novo.*

5. Where the appellate court in reversing a judgment on a verdict in favor of the plaintiff is of the opinion that great injustice might be done to one of the parties if it undertook to find the facts from the unsatisfactory evidence printed, the court will in addition to the reversal grant a venire de novo.

Argued Oct. 27, 1908. Appeals, Nos. 74 and 75, Oct. T., 1908, by defendant, from judgments of C. P. No. 1, Allegheny Co., Sept. T., 1902, No. 155, on verdict for plaintiff in case of Jennie B. Buck, Administratrix of Robert J. Buck, deceased, and Jennie B. Buck v. City of McKeesport. Before MITCH-ELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Trespass to recover damages for personal injuries. Before FORD, J.

At the trial it appeared that Mrs. Buck was injured while driving a buggy along a street in the city of McKeesport. She claimed that the accident was caused by the wheel of the buggy striking a pile of stones on the street.

Plaintiff's counsel offered in evidence the two pictures, exhibits Nos. 1 and 2.

Mr. Rodgers: "Q. When was this picture, exhibit No. 1, taken? A. They were both taken three months after the accident.

Defendant's counsel object to the admission of exhibits Nos. 1 and 2, as not having been properly proven, and object specially to exhibit No. 1 because it contains a view of something which would be material to this case, and not having been taken until three months after the accident the picture is misleading.

Mr. Marshall: The purpose of offering these pictures is so that the jury may understand the location of the two streets, and the ground in the immediate vicinity to the scene of the action. They are not offered for the purpose of showing any obstructions in the street, but in order to aid the jury in determining the case and construing the evidence.

Mr. Rodgers: The answer to that is: If counsel desire to use a plan there would be no objection to producing a plan. This is not a plan. It is a picture, and a picture of the alleged scene of the action and the surroundings at a period three months after the date of the accident. Exhibit No. 1 contains at least one object that might have a bearing on this case, and the particular objection to it is, that the obstruction is shown upon the picture, existing at a particular place, and any evidence of an obstruction three months afterwards, at this stage of the case, is of no value, but is, on the contrary, misleading.

Mr. Marshall: We will follow this by proving by Mrs. Buck, that she had these taken as soon afterwards as she was able to have them taken.

The Court: Do you insist, Mr. Rodgers, on further proof as to how these were taken?

Mr. Rodgers: We insist upon full proof of everything.

The Court: Otherwise I think they are competent.

Mr. Marshall: "Q. Mrs. Buck, after you were hurt on October 15, were you confined to your bed? A. Yes, sir, for over three months. Q. Did you have these pictures taken, or your husband? A. My husband went and got a photographer and had them taken. Q. Are you familiar with that locality? A. Yes, sir. Q. You said those pictures were fair representations of the place? A. Yes, sir."

Mr. Rodgers: "Q. When did you see the scene of the accident after the accident? A. I didn't see it, I suppose, for nine

or ten months after. I was not down there. These pictures I seen as soon as they were taken."

Mr. Rodgers: We insist upon our objection.

The Court: The objection is overruled and exception noted to defendant. The exhibits are admitted for the purpose of showing the place and the surroundings of the alleged accident, in so far as the surroundings refer to the streets, intersection of streets, and the buildings fronting on the streets. [3]

Plaintiff was asked this question:

"Q. Did you work before you were married?"

Objected to by the defense as immaterial.

Plaintiff's counsel offer to show whether she did or not, for the reason that she is now left to her own resources, without a husband, and unable to do any manual labor of any kind, and if she worked before she was married, to show what ability she had, if any, as to showing that loss is sustained.

Objected to by the defense as incompetent and irrelevant.

The Court: Her permanent injury, if she be permanently injured, would revert to her use since the death of her husband. The objection is overruled and exception noted to defendant. [4]

"Q. Did you work before you were married? A. Yes, sir; and when I was married to Mr. Buck my mother and I kept a restaurant. Q. What did you do?"

Objected to by defense as immaterial and irrelevant.

The Court: You may show that she followed some particular occupation.

Mr. Marshall: I want to show what particular part she did of it. I am not asking what she made at it.

Objected to by defense as immaterial and irrelevant.

The Court: Objection overruled and exception noted to defendant.

"Q. What part of the work did you do? A. I done the cooking and attended to the meals as they were ordered in. Q. And of course after you were married to your husband you attended to his housework, as you have told us? A. Yes, sir. Q. Did you ever work for any person on a salary?"

Objected to by defense as irrelevant and immaterial.

The Court: Objection overruled and exception noted to defendant.

"A. Before I was married, and before my mother became a widow, I lived out, at $3.00 and $3.50 a week." [5]

Mrs. Jennie B. Buck, plaintiff, recalled in her own behalf, testified as follows:

Mr. Marshall: "Q. Start in with the point that you said your horse was coming down the State road on a walk? A. Yes, sir."

Mr. Rodgers: What do you propose to prove?

Plaintiff's counsel propose to prove by the witness the manner in which she crossed the street, the manner in which she was driving down the street, and the speed at which the horse was going at the time.

Mr. Rodgers: We object, because the witness has already testified on the subject, and she should not now be allowed to make another statement on the subject at this stage of the case.

The Court: I suppose the only matter you want to prove by the witness is what control, if any, she had over the horse.

Mr. Marshall: "Q. Will you tell us what control you had of the horse, Mrs. Buck?"

Mr. Rodgers: If the purpose is to contradict her own witness, then we add that to the objection.

Mr. Marshall: We do not propose to contradict our own witness, but we do propose to tell our idea of the accident.

The Court: The objection is overruled. Exception to defendant. [6]

Verdict and judgment for the administratrix for $4,520 and for Mrs. Buck for $4,120. Defendant appealed.

*Errors assigned* among others were (1) in refusing binding instructions for defendant; (4–6) above instructions, quoting them.

*W. B. Rodgers*, with him *W. E. Newlin*, for appellant, cited as to the photographs: Beardslee v. Columbia Twp., 188 Pa. 496.

*Rody P. Marshall,* with him *Thomas M. Marshall* and *George O. Calder,* for appellees.

OPINION BY MR. JUSTICE MESTREZAT, January 4, 1909 :

The subject of the third assignment of error is the admission in evidence of exhibits Nos. 1 and 2, which are photographs of the locus in quo. The learned judge in admitting the evidence said : " The exhibits are admitted for the purpose of showing the place and the surroundings of the alleged accident, in so far as the surroundings refer to the streets, intersection of streets, and the buildings fronting on the streets." The photographs were taken three months after the accident and were authenticated only by the testimony of the appellee herself, who said, replying affirmatively to a question of her counsel, that " those pictures were fair representations of the place." She did not see the place for nine or ten months after the accident happened. If it be conceded that the photographs were properly authenticated, yet they were clearly not admissible in evidence because they showed a pile of stone at the place where the appellee alleges there was a stone pile which caused her injuries, and her own witness, Gibson, testified that the stone pile which it is alleged caused her injuries, remained at the place only three or four days after the accident, when it was removed by a colored man who " cleaned it off." If, therefore, there was a stone pile at the place shown in the photograph it was not the same pile that was there at the time of the accident, and it necessarily follows that it was put there by some person after the removal of the stone pile which, it is alleged, caused the appellee's injuries. Whether the pile of stone shown in the photograph is of the same dimensions as that which upset the appellee's buggy or whether it was greater or less, the evidence does not disclose. But her own evidence does show that it was not the same pile of stone, and hence the photographs, which the learned judge admitted " for the purpose of showing the place," show a condition of affairs that did not exist at the time of the accident, but was created by someone thereafter and for a purpose not disclosed by the evidence. The existence of a stone pile at this place at the time of the accident was denied by the appellant and was the most material question in the case, and it is apparent that

the appellee could not show the fact by producing a photograph which showed another and different pile of stone at the place of the accident than the pile there at the time the appellee was injured.

The photographs were offered and admitted not simply for the purpose of showing the streets, buildings, etc., but " the place " of the accident. They were, therefore, misleading, as they showed a pile of stones on the street at the place of the accident which, although the appellee alleges her buggy was upset by a stone pile there, her own evidence shows was not the stone pile at the place when the accident occurred. It may also be added that they do not show clearly " the streets and intersection of streets." Possibly, as explained by the parol testimony, the jury could understand the location of the streets, but the photographs themselves did not give an adequate or clear representation of the streets at the place of the accident. This is manifest from an examination of the blue print which was in evidence and from which a jury would have no difficulty in understanding thoroughly and intelligently the locus in quo.

The appellee apparently made no effort to produce the best evidence of the accuracy of these photographs and show that they fairly and truthfully represented conditions at the place of the accident. It does not appear that there was any reason for not calling the photographer who photographed the place, and the information on the subject elicited from the appellee was so brief and general that it can scarcely be called an authentication of the photographs. Photographs to be competent evidence should be properly and carefully taken so that they will truthfully represent the place or the object. For, as said in Cunningham v. Fairhaven, etc., Ry. Co., 72 Conn. 244. " it is well known that a photograph may, through the want of skill of the photographer, or through an intentional or skillful manipulation be inaccurate or misleading." And in expressing the same thought, this court said in Beardslee v. Columbia Township, 188 Pa. 496, 502 : " In careless, or inexpert, or interested hands they are capable of very serious misrepresentation of the original. Before they are permitted to ·be used in the trial, therefore, there should always be preliminary proof of care and accuracy in the

taking of them, and of their relevancy to the issue before the jury."

The evidence, the admission of which is the subject of the fourth and fifth assignments of error, should not have been admitted. At the time of her husband's death, a short time prior to the trial, the appellee had been married twenty-three years, and her own testimony, offered and admitted under objection, showed she was engaged at labor before she was married, and the compensation she received. The purpose of the testimony, as stated by her counsel, was " to show what ability she had, if any, as to showing what loss she sustained." In his printed brief, the counsel suggests that " this evidence was properly admitted, not for the purpose of showing her earnings, but for the purpose of showing her capacity to earn a living, and no question was asked as to what those earnings were." We think the evidence showed the appellee's earning capacity at a period entirely too remote to aid the jury in ascertaining her capacity for work at the time of the accident. She was about forty-six years of age at the time of her husband's death and, therefore, was about twenty-three at the time she was married. What her salary or wages were twenty-three ago would be a very unsafe basis on which to determine the value of her services at this time. During that period sickness or other causes may have entirely deprived her of any earning capacity. As affecting the damages sustained by the appellee, the evidence must show her earning capacity and her ability to work at the time of the accident.

The fourth and fifth assignments are sustained.

The orderly conduct of the trial required the appellee to introduce her testimony in chief to sustain her cause of action, and before she had rested and the motion for the nonsuit had been made. That the evidence offered after the motion was made was for the purpose of introducing testimony which should have been offered in chief is shown by the remark of her counsel, in reply to the defendant's objection, that, " We do propose to tell our idea of the accident." It is the practice to permit counsel to recall a witness after a motion for a nonsuit to testify to something that has been inadvertently overlooked or omitted, but not to start anew to make out the case in chief. As the matter, however, is largely discretionary

with the trial court, we will not sustain the assignments alleging error in this respect.

This appears to be a close case on the facts, and the unsatisfactory manner in which the case was tried leaves us in doubt whether it should have gone to the jury. As affecting the vital question in the case, the learned trial judge says of the appellee's testimony : " Her testimony as to striking the stone pile is not very definite." The jury may have been able to determine the facts from the testimony given on the trial, but it cannot be satisfactorily done by an appellate court in reading the testimony. As said in Kupp v. Rummel, 199 Pa. 90, 91 : " The examination of the witness as thus conducted may have been quite satisfactory and clear to those who saw as well as heard him testify, but to a reader of the testimony as it appears in the paper-book, it is confusing and unintelligible." In testifying, the witnesses would frequently locate objects and places by referring to the plan or photographs without describing them so the description would appear on the stenographer's notes. This, as we have said, may have been sufficiently intelligible to those who saw and heard the witness, but conveys no definite information to us. As an illustration of the manner in which the witnesses were permitted to testify, we quote the answer of Mrs. Buck to a question propounded by appellant's counsel as follows : " Right along here (indicating). The dirt was thrown out and there was timber about on here (indicating). The dirt was thrown over that way (indicating)." It is quite apparent, therefore, that we are not in a position to determine, as requested by the appellant, whether " under the pleadings and evidence in the case the verdict should be for the defendant." We might do great injustice to one of the parties if we were to undertake to determine the facts of this case from the evidence submitted in the paper-book.

The third, fourth and fifth assignments of error are sustained, and the judgment is reversed with a venire facias de novo.