Rooney *v*. Maczko, Appellant.

Foley *v*. Maczko, Appellant.

Argued March 20, 1934. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

114

*Jos. W. Ray, Jr.,* of *Shelby, Hackney & Ray* and *C. P. Humer,* for appellant.

*John Duggan, Jr.,* with him *James A. Reilly,* for appellees.

OPINION BY MR. JUSTICE MAXEY, April 23, 1934:

The Cities of Connellsville and Uniontown are connected by the Leisenring Road, 18 feet wide, a road without berm, shoulder or sidewalks. It runs east and west and passes through Leisenring. One-quarter of a mile east of the latter is the property of the Greek Catholic Church which borders the northern curbline of this road for a distance of 500 feet. On the north side of this highway the tracks of the West Penn Street Railway extend eastward from the town just mentioned. At about the western corner of the church property these tracks cross the highway diagonally to the south side and then continue eastward.

On October 3, 1930, the plaintiffs were walking westward on the south side of this road, along the street car

tracks, in front of the church property. They heard behind them an approaching westbound street car, and also saw ahead of them a signal light indicating the car's approach behind them. They then crossed over to the north side of the road and continued westward until they reached a point about thirty feet east of the tracks which crossed the road diagonally, as above stated.

It was quite dark at the time and after the westbound street car had crossed its diagonal intersection an automobile driven eastward by defendant crashed without warning into the plaintiffs severely injuring them. Foley's body was hurled a considerable distance in the air and then to one side of the road. Rooney clung to the automobile after being struck. The crash was heard at least 700 feet away. The right front fender and the right front light of the car were broken and the radiator bent back. The only witness as to the rate of speed at which the automobile was traveling testified that it traveled about 45 to 50 miles an hour at a point 150 to 200 feet west of the street railway crossing.

As a result of being struck by defendant's car, Rooney, then 48 years of age, suffered compound fractures of both legs, brush burns on his forehead and injuries to his right hand. After first having the heel of his left foot removed, and having other operations performed on his left leg, he finally had to have this leg amputated at the knee. The tibia of his right leg had ultimately to be removed and he is obliged to wear a brace from his hip to his foot. He was in the hospital for a total of seventeen months and had eight serious operations under anæsthetics, and he is unable to work.

Foley, then 50 years of age, was rendered unconscious in the accident and sustained a fracture of his left leg between the knee and ankle, and a severe blow in the head, which caused bleeding from the ear. His jaw and chin were cut and he showed symptoms of skull fracture. He was in the hospital under treatment exactly six months.

The suits of both victims were tried together. Foley was awarded a verdict of $5,000, and Rooney a verdict of $18,000. The court thought the latter verdict excessive, and Rooney remitted all of the verdict above the sum of $12,721.50. The defendant entered rules for judgment n. o. v. on the verdicts. The court discharged these rules. Judgment was entered for Rooney in the sum of $12,-721.50 and for Foley in the sum of $5,000. Defendant appealed.

The first question presented is whether or not after a lapse of two years plaintiffs had the right to amend their statement of claim by changing the word "south" to "north" so that the statement read: "Plaintiffs were walking on the north [their right-hand] side of the highway when struck by defendant's automobile." In the original statement the word "south" was used but Rooney testified that he had crossed to the north side just before he was hit by the defendant's automobile. Plaintiffs' counsel then moved to amend the statements accordingly. Defendant objected on the ground that the amendment pleaded a new cause of action barred by the statute of limitations. The amendment was allowed. This was assigned for error. We overrule the assignment.

Raskus v. Allegheny Valley St. Ry. Co., 302 Pa. 34, 153 A. 117, was a case in which the plaintiff's statement of claim set forth the intention of her husband (the deceased) to board an interurban trolley car at a regular stopping place, but that no service station or platform was provided at that point, and it became necessary for him to stand on the track, where he was struck by the oncoming car. The evidence failed to substantiate this claim, but testimony was offered to show that he had crossed the railway track to the east, where a fence, constructed about three feet from the rails, narrowed the passageway, and left such little room for one there located that it was impossible to avoid being hit. When the plaintiff's case was closed, an amendment of the pleadings was asked, so as to conform to the proof of

negligence offered. This was allowed, against objection made on the ground that a second cause of action was thus relied on, which was unenforceable because the time of bringing a new suit had passed. This court held that the objection was not well taken, saying in an opinion by Mr. Justice SADLER: "Whether the deceased stood on the track or by its side, if the negligence of the motorman caused the injury, defendant was responsible. ......
There is no merit in the complaint that the change was not asked until plaintiff's case had been presented, for even then it is not too late to make the alteration if it appears the same accident, resulting in the injury, for which suit was brought, has been proven, though differing in details as to the manner of infliction," citing Davis v. Investment Land Co., 296 Pa. 449, 146 A. 119.

In New York Central & Hudson River R. R. Co. v. Kinney, 260 U. S. 340, 346, the Supreme Court of the United States in an opinion by Mr. Justice HOLMES said: "When a defendant has had notice from the beginning that the plaintiff sets up and is trying to enforce a claim against it because of specified conduct, the reasons for the statute of limitations do not exist, and we are of opinion that a liberal rule [allowing amendments to plaintiff's statement] should be applied."

In U. S. v. Memphis Cotton Oil Co., 288 U. S. 62, 67, the United States Supreme Court in an opinion by Mr. Justice CARDOZO said: "The general rule is said to be that an amendment of a pleading will take effect by relation and thus relieve against the bar of an intervening limitation if the identity of the cause of action is still substantially the same, but that the limitation will prevail if under the guise of an amendment there is the substitution of a new cause of action in place of another wholly different. ...... A 'cause of action' may mean one thing for one purpose and something different for another. ...... At times and in certain contexts, it is identified with the infringement of a right or the violation of a duty. At other times and in other contexts, it

is a concept of the law of remedies, the identity of the cause being then dependent on that of the form of action or the writ. Another aspect reveals it as something sepparate from writs and remedies, the group of operative facts out of which a grievance has developed. This court has not committed itself to the view that the phrase is susceptible of any single definition that will be independent of the context or of the relation to be governed. None the less, it has fixed the limits of amendment with increasing liberality."

The basis of plaintiff's claim is an injury he received by reason of defendant's want of care under the circumstances. By his amendment plaintiff changed the description of one of the circumstances but did not thereby alter the identity of his cause of action, i. e., substantially change the basis of his recovery right. A change as to the time or place where an injury was received *might* mean a departure from one cause of action and the attempted standing upon another, but it does not *necessarily* mean that. When it is evident from the pleading as amended that plaintiff has not abandoned one cause of action for another, the amendment as to time or place does not amount to the pleading of a new cause of action.

Defendant knew the exact situs of the wrongful act with which he was charged because it was he who was driving the car by which the wrongful act was committed. For this reason he was not justified even in pleading surprise. The refusal of the court below to grant a continuance upon defendant's pleading of surprise is assigned for error, but it is not included in appellant's statement of questions involved. Therefore, under Rule 50 of our court it need not be considered. Appellant's statement of the questions involved limits the scope of the appeal: Keck v. Vandyke, 292 Pa. 532, 141 A. 446; Com. v. Cauffiel, 298 Pa. 319, 148 A. 311, and Com. v. Snyder, 294 Pa. 555, 144 A. 748. Furthermore, even if this question were considered, there is noth-

ing in the record showing an abuse of discretion in refusing a continuance because of the "surprise" pleaded. See Romanowski v. Morganstein, 111 Pa. Superior Ct. 443.

The more serious error alleged is of the inadequacy of the evidence offered to prove each plaintiff's loss of earning power. Rooney testified that he had worked for $4 a day in 1923, and that since 1925 he had worked "off and on a little" for which he received $4 a day. Since 1925 he worked "not to amount to anything." Foley testified that "about a year and a month or so ago" he worked for a week, laying track for a coal company, and was paid $4 a day, and after that he "worked putting up [small] golf grounds," about twelve days altogether, and about the last work he had done prior to the injury received (which was in October, 1930) was in May, 1930. He worked nine hours daily on the golf courses and received fifty cents an hour.

What a man was able to earn at his regular occupation a reasonably brief time before receiving an injury is evidence from which, with other evidence, a jury may infer what his earning power was just before the injury. It is a matter of common knowledge that while rates of wages do not ordinarily change suddenly and, barring sickness or accident, a man's earning power is not likely to be suddenly diminished, yet during a period of years there may be a substantial change both in rates of wages and in actual earning power. Evidence of what a man earned several years before the basic event must be excluded as possessing too little probative value as to the earning power impaired.

In Buck v. McKeesport, 223 Pa. 211, 218, 72 A. 514, this court held: "What her [plaintiff's] salary or wages were twenty-three years ago would be a very unsafe basis on which to determine the value of her services at this time. During that period sickness or other causes may have entirely deprived her of any earning capacity." In Helmstetter v. Pittsburgh Rys. Co., 243 Pa. 422, 90 A.

203, this court held that evidence of earnings thirteen years before the injury was too remote. In Hobel v. Mahoning & Shenango Ry. & Light Co., 229 Pa. 507, 79 A. 119, this court held that evidence as to the earning capacity of the plaintiff at a period seven years before the accident, while employed in an entirely different capacity, was inadmissible. In Schwartz v. Cramp, 86 Pa. Superior Ct. 475, the Superior Court held that "past earnings are usually some proof of the earning ability of the plaintiff at the time of the accident. ...... If the time is not too remote such proof is admissible."

The admission of evidence of Rooney's earnings in 1923 and 1925 was error. Apparently Rooney had done no work since 1925 and the therefore he could not attribute his idleness to the depression, which began in 1929. While it is evident that Rooney was greatly incapacitated by the injuries he received, it is not in evidence that this has caused him any loss of earnings because he had had no earnings for years prior to the accident.

Of course, Rooney's injuries entitle him to recover not only for the impairment of his earning power, if he had any earning power, but also for his pain and suffering, temporary and permanent (if proved), for the crippling of his right limb and the loss of his left limb, and for any other elements of damage pleaded and proved. In arriving at their verdict in this case, the presumption is that the jury included something for the impairment of Rooney's earning power. Since proof on this element was wanting, the judgment will have to be reversed, though proof was offered to sustain the other items of damage pleaded.

In the case of Foley v. defendant, there was some evidence of his earnings within a reasonable period before the accident. Therefore, there is nothing which calls for a reversal in this case.

As the case of Rooney v. defendant is to be retried we state that we find in the record no "incontrovertible

"physical facts" decisive of the issue. The evidence is oral. Nor do we find error in the admission of the testimony as to the rate of speed of defendant's car a few seconds before the accident and about 150 or 200 feet away from its scene. There was ample evidence of defendant's negligence to warrant the submission of the case to the jury.

In the case of Rooney v. defendant, the judgment is reversed with a venire. In the case of Foley v. defendant, the judgment is affirmed.