## Soley v. Nelson (No. 2)

*Howard R. Miller* and *Robert M. Harris*, for plaintiff.

*Howard Stutzman* and *James P. Bohorad*, for defendant.

DALTON, J., June 10, 1957.—Defendant operated a trade school which had been approved as a GI school by the Pennsylvania Department of Public Instruction and the United States Veterans Administration. Plaintiff was a student in a course of carpentry at the school, having been qualified to attend the school by reason of his status as a veteran of World War II. On March 26, 1952, while plaintiff was using an unguarded circular rip saw at the school, his right hand was drawn into the saw blade, resulting in the loss of several fingers. He brought suit and recovered a verdict at the hands of a jury. Defendant has moved for judgment n. o. v.

The first question presented is whether the cause of action set forth in the amended complaint is barred by the statute of limitations.

In the original complaint, plaintiff set forth the circumstances of his injury and the relation of the parties and charged defendant with negligence in failing to guard the saw and in failing to give him sufficient and proper instructions and supervision. Plaintiff also alleged that defendant was required by the Act of May 18, 1937, P. L. 654, to provide adequate safeguards on the circular rip saw and other appliances used at the school. The court, on a demurrer filed by defendant, held that the Act of 1937 was applicable only to an employer-employe relationship and not to a teacher-student relationship. The court accordingly sustained the demurrer with leave to plaintiff to amend: Soley v. Nelson, 7 D. & C. 2d 12. Plaintiff then filed an amended complaint which eliminated reference to and reliance upon the Act of 1937, but which in all other respects repeated the allegations of the original complaint.

When the case was called for trial, defendant objected to the introduction of any evidence upon the ground that the amendment introduced a new cause of action which was barred by the statute of limitations. The objection was overruled and the case proceeded to trial and verdict.

We are not in accord with defendant's contention that the amendment introduced a new cause of action. "The phrase 'cause of action' in a trespass case means the negligent conduct which occasioned the injury": Stewart v. Scharff, 178 Pa. Superior Ct. 629, 632. The "negligent conduct which occasioned the injury" was the same in both pleadings. There was no change in the factual averments. All that the amendment did was to eliminate plaintiff's conclusion of law that the acts and omissions of defendant violated the Act of 1937. That is not changing the cause of action. If the facts pleaded gave rise to a cause of action for negligence, it was because defendant's conduct fell below "the standard established by law for the protection of others against unreasonable risk of harm": A. L. I. Restatement of the Law of Torts §282.

It is immaterial to the question of negligence whether the violated standard is established by statute or by the common law so long as it is established by either: Armit v. Loveland, 115 F. 2d 308.

"The original statement placed the claim in a class governed by certain laws, and, whether statutory or common, it was not incumbent on plaintiff to further plead the particular law violated": Goldberg v. Friedrich, 279 Pa. 572, 576.

The fact that plaintiff went further and erroneously concluded that the applicable law was the Act of 1937 is of no consequence. The conclusion was no more than harmless surplusage. Where, as here, the controlling facts alleged in the amended pleading are the same as those set forth in the original pleading, the amend-

ment leaves the cause of action unchanged: Goldberg v. Friedrich, supra. " 'When a defendant has had notice from the beginning that the plaintiff sets up and is trying to enforce a claim against it because of specified conduct, the reasons for the statute of limitations do not exist . . .' ": Rooney v. Maczko, 315 Pa. 113, 117, quoting from New York Central & Hudson River R. R. Co. v. Kinney, 260 U. S. 340.

The cases cited by defendant are easily distinguishable. In all of those cases, proof of new and additional facts was required to sustain the cause of action as amended. That is not the situation here. *Every material fact set forth in the amended complaint was pleaded in the original one.*

The second question raised by the defendant is whether judgment n. o. v. should be entered because "the doctrine of res ipsa loquitur or liability without fault does not apply to the facts of the case."

Plaintiff never contended that either of those doctrines applied to the case. Nor was the case tried or submitted to the jury on the basis of either of those doctrines. The jury was instructed, both in the body of the court's charge and in defendant's points which were affirmed and read, that the mere occurrence of an accident is not proof of negligence and that the burden was upon plaintiff to prove that defendant was guilty of negligence which caused the accident.

The third question presented is whether the evidence showed any negligent acts on the part of defendant.

The complaint charged defendant with negligence: (1) In failing to guard the saw; (2) in failing to give plaintiff sufficient and proper instructions; and (3) in failing to give plaintiff sufficient and proper supervision. In examining the evidence for proof of those allegations, it is our duty to view the testimony in the light most favorable to plaintiff, who has had the verdict, and to resolve every reasonable inference of fact

and any conflict of evidence in his favor: Vasser v. Carlini, 180 Pa. Superior Ct. 271, 276. All of the evidence favorable to him, whether appearing in his own case or that of his opponent's, must be taken as true, and all unfavorable to him, if dependent solely on testimony, must be rejected; Herchelroth v. Jaffe, 154 Pa. Superior Ct. 54, 55-6.

Plaintiff enrolled in a course in carpentry at the school in July of 1951 and attended classes until March 26, 1952, the date of the accident. For about six months he was a member of a class conducted on the second floor of the school. During that period he was taught how to make various cuts with the use of a circular power saw, about eight inches in diameter. There was no guard upon that saw and the instructor of that class, Arthur Combe, could not recall whether he had ever instructed plaintiff to use a guard on a saw of that kind. At the end of six months, plaintiff was transferred to a class conducted on the first floor. In this class, he was required to use a power-driven circular rip saw mounted on a table in such a manner that the smaller portion of the circular saw blade protruded through a slot in the top of the table. This saw was of the same general type as the saw upstairs, but was larger and of a different make. There was no guard upon this saw, and plaintiff was given no instructions concerning the manner of its use. A removable "home-made" guard of plywood and metal had been made for this saw several months before, but if the guard had ever been attached to the saw apparently it had been removed and not replaced. There was no guard upon the saw at any time plaintiff had occasion to use it, which was about a dozen times before the accident. A fellow-student, John Tehansky, testified that he had never seen a guard upon the saw and that nobody gave them any instructions concerning a guard. The instructor in charge of this class, Joseph Moran,

flatly admitted at one point in his testimony that he had not given plaintiff and the other students any instruction concerning the use of a guard on this saw. On March 26, 1952, at about 8:20 p.m., during a recess or "break" period, plaintiff went to the saw to rip a board which he intended to use in the next class period. The students were allowed to use the equipment during the "break" period. The board was about four and one-half or five feet long, about five inches wide, and about three-fourths of an inch, or an inch thick. Plaintiff adjusted the saw so as to rip the board into two strips three inches and two inches wide respectively. He started the saw and, standing toward the left side of the saw, he fed the board into it by guiding it with his left hand and pushing with the right hand. The wider, three inch, portion of the cut was on the left side nearest him and both hands were upon this wider portion along the side of the board. When his right hand was "six inches or better" away from the blade, the board gave a sudden movement * which drew his right hand into the unguarded saw blade.

*It was unquestionably the duty of the owner of this trade school to provide the students with reasonably safe tools and equipment, particularly in view of their inexperience and lack of skill.* The case falls within the general principle, set forth in the A. L. I. Restatement of the Law of Torts §392, as follows:

"One who supplies to another, directly or through a third person, a chattel to be used for the supplier's business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be in the vicinity of its probable use, for bodily harm caused by the use of the chattel

---

* "While I was using it, I was pushing toward the saw, and all of a sudden it went this way (indicating)."

in the manner for which and by persons for whose use the chattel is supplied:

"(a) if the supplier has failed to exercise reasonable care to make the chattel safe for the use for which it is supplied. . . ."

Defendant argues that the failure to maintain a guard upon the saw could not be held to be negligence in the absence of evidence that guards are usually and ordinarily installed on saws of this type.

Arthur Combe, who was one of the instructors and who had been a carpenter for 43 years, testified that it is common practice to use guards upon rip saws.

Furthermore, defendant's argument that general usage is the test of negligence not only fails to exonerate him from negligence but actually tends to convict him of negligence. It is futile to suggest that guards for saws may not be in general usage, when as a matter of fact the Act of May 18, 1937, P. L. 654, 43 PS §25-1 et seq., requires that guards be provided on all saws used in all industrial establishments. The assumption must be that the law is generally obeyed, not that it is generally violated. Nor is the fact that a teacher-student relationship is not within the terms of the Act of 1937 of controlling importance.

"The fact that a legislative enactment requires a particular act to be done for the protection of the interests of a particular class of individuals does not preclude the possibility that the doing [non-doing?] of such an act may be negligence at common law toward other classes of persons": A. L. I. Restatement of the Law of Torts §286, Comment f.

The principle of liability for accidents caused from unguarded machinery had its origin in the common law before the Act of 1937 and its predecessor, the Act of May 2, 1905, P. L. 352, existed: Irwin v. Leuten Brick Co., 59 Pa. Superior Ct. 150, 153. "The common experience of mankind has shown the danger to

be apprehended from unguarded machinery . . . and has made clear the duty of protecting from that danger, those whose duties bring them in proximity to such machinery. The statute has merely crystallized the demands of ordinary prudence, in requiring that cogs, gearing and other machinery shall be covered": Fegley v. Lycoming Rubber Co., 231 Pa. 446, 448, 449.

Moreover, there are statutory provisions and administrative regulations adopted pursuant to statutory authority which are directly applicable to this case. Defendant, in operating this trade school, was subject to the provisions of the Private Trade School Act of May 2, 1945, P. L. 401, as amended, 24 PS §1725.1 et seq.

Section 9 of that Act, 24 PS §1725.9, provides that "No private trade school or class shall be granted a license, or shall be permitted to continue to operate under a grant license, unless—(4) The premises, equipment and conditions of the school or classes shall be adequate, safe and sanitary in accordance with standards of the Commonwealth of Pennsylvania applicable to such premises and equipment."

Section 3 of the act, 24 PS §1725.3, authorizes the State Board of Private Trade Schools "to make and to enforce rules and regulations . . . not inconsistent with the provisions of this act."

Article III, rule 4, of the board, of which we are permitted to take judicial notice (Edelbrew Brewery, Inc., v. Weiss, 170 Pa. Superior Ct. 34, 37), provides that "All equipment must be safeguarded in conformity with the rules and regulations of the State Department of Labor and Industry for similar equipment in the trades and industries . . ."

When we examine the rules and regulations of the Department of Labor and Industry, which the Board of Private Trade Schools have adopted as their own by reference thereto, we find, in the regulations for logging, sawmill, woodworking, veneer and cooperage

operations, under section 3, art. 5, which deals with woodworking machinery, rule 50 (*b*), which provides that "Each circular ripsaw shall be guarded by an approved hood which shall cover the saw at all times at least to the depth of the teeth. This hood shall be attached to a spreader which is fastened at the rear of the saw. The hood, except for self-feed rip-saws, shall adjust itself automatically to the thickness of, and shall remain in contact with, the material being cut except where finished surfaces of stock may be marred by contact with the guard, in which case the guard may be raised slightly to avoid contact. The hood shall be designed as to protect the operator from flying splinters and broken saw teeth. The hood for self-fed ripsaws shall be supported from the machine frame but need not rest upon the table nor upon the material being cut. Hoods for self-fed ripsaws shall be required to extend to a position not more than one-half (½) inch above a plane passing through the bottom of the feed rolls."

It is our duty to take judicial notice of the applicable statutes and regulations. So long as the facts pleaded and proved bring the case within the terms of a statute, it is immaterial that the statute was not pleaded. As was said in Goldberg v. Friedrich, 279 Pa. 572, 574:

"Such laws need not be pleaded or proved; it is not necessary to allege a violation of the statute, but, of course, the statement must set forth sufficient facts to bring the case within the statute."

See also Carley v. Dexcar Coal Mining Co., 262 Pa. 405, where it was held, quoting from the syllabus:

"Where a motion for binding instructions is made upon the ground that no act of assembly permits a recovery, it is sufficient on appeal to show that there is an act of assembly which permits it."

We think there was adequate evidence to support the allegation of negligence in failing to provide a guard for the saw, whether the action be viewed as

one controlled by the common law or by the Act of 1945 and the administrative regulations adopted pursuant to that act.

So far as the allegation of failure to give proper and sufficient instructions is concerned, there was the testimony of plaintiff's classmate, John Tehansky, that nobody had instructed them about a guard. There was also the flat admission of the instructor, Joseph Moran, at one point in his testimony, that he had never given plaintiff and the other students any instructions concerning the use of a guard. Although he later changed that testimony, it was for the jury to decide in which instance he was speaking the truth.

And so far as want of supervision is concerned, there is further the testimony of Moran that he passed within eight and one-half feet of the saw at 8:20 p.m., shortly before the accident happened, and noticed that the saw was running but didn't notice whether a guard was on it. If a guard was available, it was certainly part of his supervisory duties to see to it that the guard was kept in place.

Defendant's next contention is that there was no proof that the failure to provide a guard for the saw was the proximate cause of the injury. There is no merit to this contention. Plaintiff testified that as he was pushing the board, "all of a sudden it went this way", (indicating), and that his fingers were caught in the unguarded saw blade. The very purpose of a guard on moving machinery is to prevent accidental contact with it, and if an injury results from contact with unguarded machinery, by reason of some slip or accidental movement, the failure to safeguard the machinery is the proximate cause of the injury: Fegley v. Lycoming Rubber Co., 231 Pa. 446, 449; Irwin v. Leuten Brick Co., 59 Pa. Superior Ct. 154, 155.

If defendant had provided a guard which met the requirements of the regulations above quoted, the saw

would have been covered at least to the depth of the teeth and the guard would have been in contact with the top of the board. The same would have been true even if defendant had safeguarded the saw with the "home-made" guard which his agents had made. Plaintiff was not obliged to produce express testimony that the accident would not have occurred if a guard had been provided. The jury could reasonably infer that fact from the circumstances in evidence. "Proofs to a degree of absolute certainty are rarely attainable; it is sufficient that they be such as to satisfy reasonable minds": Giordano v. Clement Martin, Inc., 347 Pa. 61, 64.

Defendant's next contention is that plaintiff voluntarily assumed the risk.

The doctrine of assumption of risk has a number of exceptions. In the first place, it has been established by numerous cases that the defense of assumption of risk is not available where the injury has been caused by defendant's failure to perform a statutory duty. See, inter alia, Valjago v. Carnegie Steel Company, 226 Pa. 514, 521-22; Amiano v. Jones & Laughlin Steel Co., 233 Pa. 523, 526; Carley v. Dexcar Coal Mining Co., 262 Pa. 405, 410. If the present case is governed by the Private Trade School Act of 1945 and the regulations of the State Board of Private Trade Schools, as we think it is, assumption of risk is no defense.

Furthermore, *even in common-law actions*, the doctrine of assumption of risk is not a bar to plaintiff's recovery *"where the other's conduct constitutes a breach of duty to him or to a third person and has created a situation in which it is reasonably necessary to undergo a risk in order to protect a right or avert a harm"*: A. L. I. Restatement of the Law of Torts §893. Plaintiff, as a veteran of World War II, had a right, under the Act of Congress, to vocational train-

ing. Defendant had undertaken, for a compensation ultimately paid by the United States Government, to give plaintiff such training. *Plaintiff could not properly learn the trade unless he used the machinery which defendant provided. Plaintiff had to take that machinery as he found it or else forego his right to the training to which he was entitled under the laws of the United States and which defendant had undertaken to give him.* He was not required to surrender that right, and we cannot say, as a matter of law, in the circumstances here present, that his choice was unreasonable. As is said in Prosser on Torts, 2nd ed., page 312:

"The risk is not assumed where the conduct of the defendant has left the plaintiff no reasonable alternative."

We conclude therefore that the doctrine of assumption of risk does not bar plaintiff from recovery in this case. To hold otherwise, would be to permit defendant to benefit from the dilemma which he himself created.

Finally, defendant contends that plaintiff was guilty of contributory negligence. He offers nothing in support of that contention other than an assertion that plaintiff should have been aware of the potential danger of the spinning blade. This is merely reintroducing the defense of assumption of risk, which we have rejected as inapplicable, under the name of contributory negligence. Changing the name of the defense gives it no greater efficiency. We have carefully reviewed the evidence, and we find nothing which would justify us in saying, as a matter of law, that defendant was guilty of contributory negligence. That was a question of fact for the jury, and the jury have decided it in favor of the plaintiff.

And now, June 10, 1957, at 10 a.m., defendant's motion for judgment n. o. v. is refused. Judgment sur verdict is entered in favor of plaintiff and against defendant.