360 A.2d 191

**KEYSTONE BUILDING CORPORATION,**
a corporation

v.

**LINCOLN SAVINGS AND LOAN ASSOCIA-
TION, Appellant.**

Supreme Court of Pennsylvania.

Argued March 12, 1976.

Decided July 6, 1976.

John A. Metz, Jr., Metz, Cook, Hanna & Kelly, Pittsburgh, for appellant.

Frank J. Gaffney, Thorp, Reed & Armstrong, Pittsburgh, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

This case involves a dispute over an alleged breach of contract by appellant Lincoln Savings and Loan Association. The controversy between Lincoln and appellee Keystone Building Corporation has been the subject of protracted litigation including an earlier appeal to this Court, 439 Pa. 444, 266 A.2d 648 (1970). On remand, the trial court held that a decree entered by consent of the parties is res judicata on the issue of Lincoln's liability for breach of contract. The Superior Court affirmed and we granted the petition for allowance of appeal.[1] We find that there was no determination of Lincoln's liability, reverse the order and remand for further proceedings.

The Keystone Building Corporation, the Lincoln Savings and Loan Association and the Manufacturers Life Insurance Company of Canada entered into a construction loan agreement on October 7, 1968. Under the terms of the agreement Lincoln agreed to lend Keystone the funds necessary to finance Keystone's construction of an apartment complex and Manufacturers agreed to be the permanent mortgagee for the project.

In May 1969, approximately two months after construction had begun, a dispute arose between Lincoln and Keystone over the terms and conditions under which Lincoln was obligated to advance the necessary funds. The dispute revolved around the nature and sufficiency of the

1. We hear this appeal under authority of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 204, 17 P.S. § 211.204 (Supp. 1975).

proofs of expenditure which Keystone was required to present to Lincoln as a precondition for payment. Keystone believed it was submitting the vouchers in the proper form. Lincoln refused payment contending that the vouchers were not in accordance with the contract requirements. After protracted negotiations, Keystone commenced a suit in equity on July 3, 1969, asking that Lincoln be compelled to advance the requisitioned loan proceeds and that money damages be assessed against Lincoln for its asserted breach of contract.

On July 18, 1969, the court entered a consent decree based on an agreement between counsel for both parties.[2] The decree sought to resolve the dispute between Keystone and Lincoln concerning the form of the vouchers necessary to authorize payments. The decree provided that Keystone had to support its present and future requisitions for loan proceeds in a specified manner and that Lincoln had to advance the amounts thus requisitioned promptly. Unfortunately, Keystone and Lincoln could not agree on the implementation of the decree and the dispute continued unabated. On August 5, Keystone petitioned for and was granted a rule to show cause why Lincoln should not be held in contempt for failing to comply with the July 18 decree.

A lengthy hearing was held and, on October 6, the court decreed that although Lincoln had not been in contempt, it was obligated to provide Keystone with the funds properly qualified under the construction loan agreement and to advance all sums properly requisitioned thereafter. The court found that certain other expenses were not payable because they were beyond the terms of the construction loan agreement. The October 6 decree did not address whether Keystone was entitled to damages caused by Lincoln's alleged breach of the contract. There is no indication that either the court or the

2. No testimony was taken and no evidence presented at the hearing held on that date.

parties focused on anything other than how the vouchers should be submitted and which amounts were properly included for payment.

Lincoln did not make the payments immediately and, on October 10, Keystone again petitioned for and was granted a rule to show cause why Lincoln should not be held in contempt. Lincoln filed a motion to dismiss the rule contending it was premature. It argued that Pa.R. Civ.P. 1518 allows twenty days to file exceptions to the October 6 order and that the twenty days had not yet run. The trial court ruled that Lincoln was not entitled to file exceptions to the October 6 decree because that decree "only interprets the final decree of the Court of July 18, 1969." Appeal was taken to this Court.

During the pendency of the appeal Manufacturers took an assignment from Lincoln of all its interest in the agreement. Lincoln then petitioned this Court to dismiss the appeal or remand the case to the trial court with directions to dismiss the action. Lincoln argued that because Manufacturers had assumed all of the responsibility for payment of the vouchers the case had become moot. Keystone replied that, although the question of payment on the vouchers may have been mooted by the assignment, the case was not moot because Keystone had sought other relief. Keystone had sought damages in its original complaint for the costs of interim financing and other expenses incurred as a result of Lincoln's alleged breach.

On July 2, 1970, this Court held that the action in equity would not be dismissed because, even though one of the central issues in the case was moot, Keystone had also sought damages for a breach of contract. We concluded:

> "[S]ince there is still the possibility that the court could grant Keystone some sort of relief, the question whether further relief should be granted is initially for the trial court to decide."

439 Pa. at 448, 266 A.2d at 650. We remanded the case for further proceedings.

On October 14, 1971, on remand, the trial court found that there were no grounds for the award of equitable relief and that there was an adequate remedy at law. The case was transferred to the law side of the court for further proceedings. Keystone then filed its complaint on the law side of the court seeking damages from Lincoln for the alleged breach of the construction loan agreement. Lincoln answered, denying liability.

On April 22, 1975, without motion or petition by either party, Judge Louik entered an order that the case proceed solely on the issue of damages. The trial court stated, referring to the July 18 decree, that there had been a decree of the trial which was "not reversed, and therefore, the prior proceedings should be considered as res adjudicata on the question of [Lincoln's] liability." The trial court certified the question for appeal.[3] The Superior Court affirmed in an opinion by Judge Jacobs.

Lincoln raises two arguments on this appeal. First, it argues that the July 18 consent decree—further interpreted by the October 6 decree—acted as a complete settlement or final judgment on Keystone's cause of action on the contract.[4] Keystone's action sought specific performance and damages for Lincoln's alleged failure to perform timely. Although the July 18 and October 6 decrees were directed only to the issue of performance—the payment of the vouchers—Lincoln argues that the entire

---

**3.** The question was certified for appeal under authority of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P. L. 673, art. V, § 501, 17 P.S. § 211.501 (Supp.1975).

**4.** See Restatement of Judgments, § 67 and comments thereto:

"a. *The doctrine of merger.* Where the plaintiff brings an action against the defendant and a valid and final judgment for the payment of money is rendered in favor of plaintiff, the original claim of the plaintiff is extinguished and a new cause of action on the judgment is substituted for it. In such a case the plaintiff's original claim is merged in the judgment."

action on the contract constituted one cause of action [5] which was extinguished by the consent decree. Thus, Lincoln contends, if the prior decree is res judicata it is res judicata against Keystone barring Keystone from seeking any further relief on the contract. We need not consider that contention because Lincoln raises it for the first time on this appeal. Because it was not raised in the court below it has not been preserved for our review. *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974).

■ We agree with Lincoln's second argument that the consent decree is not res judicata of its liability for breach of the contract. It is the law of the Commonwealth that

> "a final valid judgment upon the merits by a court of competent jurisdiction bars any future suit between the parties or their privies, on the same cause of action. Identity of the thing sued for, the causes of action, and of the quality of the capacity of the parties suing or sued, is essential to the application of the doctrine."

*Burke v. Pittsburgh Limestone Corp.*, 375 Pa. 390, 395, 100 A.2d 595, 598 (1953); *Stahl v. Hilderhoff*, 432 Pa. 179, 247 A.2d 582 (1968); *Callery v. Blythe Township Municipal Authority*, 432 Pa. 307, 243 A.2d 385 (1968); *Stevenson v. Silverman*, 417 Pa. 187, 208 A.2d 786, cert. denied, 382 U.S. 833, 86 S.Ct. 76, 15 L.Ed.2d 76 (1965).

■ A judgment entered as a result of a consent decree similarly bars relitigation of a claim. Cf. *Cooper-Bessemer Co. v. Ambrosia Coal & Construction Co.*, 447

---

5. The question whether certain facts give rise to one cause of action involving more than one issue or more than one cause of action has long vexed the courts: "A 'cause of action' may mean one thing for one purpose and something quite different for another." *United States v. Memphis Cotton Oil Co.*, 288 U.S. 62, 67–68, 53 S.Ct. 278, 280, 77 L.Ed. 619 (1933). See e. g., *Rooney v. Maczko*, 315 Pa. 113, 172 A. 151 (1934); Restatement of Judgments, §§ 61–67.

Pa. 521, 291 A.2d 99 (1972); *Zampetti v. Cavanaugh,*
406 Pa. 259, 176 A.2d 906 (1962); *Harding v. Harding,*
198 U.S. 317, 25 S.Ct. 679, 49 L.Ed. 1066 (1905); *United
States v. Parker,* 120 U.S. 89, 7 S.Ct. 454, 30 L.Ed. 601
(1887).[6]

█ Our review of the record, however, persuades us
that the parties intended that the consent decree cover
only how the vouchers were to be submitted and what
payments were properly due under the agreement. The
decree was designed to interpret the contract require-
ments to get the funds flowing. The conduct of the par-
ties and the court, and the language of the decree itself,
indicates that they did not intend the decree to act as an
adjudication of whether there was a breach of the con-
tract by Lincoln rendering it liable for unascertained
damages. That issue was not addressed and was re-
served for future determination. Thus, although the
requisite identities for res judicata are present there has
not been a final judgment on the merits of the liability
question. Without such an adjudication, the issue cannot
justly be resolved against Lincoln.[7]

6. "In the absence of fraud, mistake, or collusion a judgment by
    consent is binding and conclusive upon the parties . . .
    to the same extent as judgments entered upon controverted
    facts and due consideration thereof upon a contested trial.
    . . . [I]t is well settled, as a general proposition, that a
    judgment or decree, though entered by consent or agreement of
    the parties, is res judicata to the same extent as if entered after
    contest."

    47 Am.Jur.2d, Judgments, § 1089. See generally, Annot., 2 A.L.
    R.2d 514 (1948).

7. "[W]here the second action between the same parties is upon a
    different claim or demand, the judgment in the prior action op-
    erates as an estoppel only as to those matters in issue or points
    controverted, upon the determination of which the finding or
    verdict was rendered. In all cases, therefore, when it is sought
    to apply the estoppel of a judgment . . . the inquiry
    must always be as to the point or question actually litigated or
    determined in the original action; not what might have been
    thus litigated and determined."

    *Cromwell v. County of Sac,* 94 U.S. 351, 352–53, 24 L.Ed. 195
    (1876); *United States v. International Building Co.,* 345 U.S. 502,

Our conclusion is reinforced by several factors. The July 18 decree itself indicates that the court and the parties did not intend it to be a final determination of the entire claim. The decree states, "Jurisdiction of the within matter shall be retained by this Court pending further order." In its answer to Lincoln's "Suggestion of Mootness and Motion to Vacate Orders as Moot" filed in the prior appeal to this Court, Keystone argued that the case should not be dismissed as moot because "evidence on other matters for which relief is sought was not fully presented to the Court below." It is apparent that Keystone did not then regard the liability issue as adjudicated. Moreover, Judge Louik's order stating that the further proceedings in the trial court would proceed only on the damage issue was a sua sponte pronouncement. Up to that time Keystone had not contended that the question of Lincoln's liability was res judicata.

■ Our determination that Lincoln's liability has not been adjudicated is not altered by the October 6 decree which, unlike the July 18 decree, was issued after a hearing. As the trial court ruled when Lincoln sought to file exceptions to that decree, "the Order of this Court of October 6, 1969, only interprets the final decree of this Court of July 18, 1969." Thus the October 6 decree cannot be given more effect or greater scope than the July 18 decree which it interpreted.

Nor did the decision of this Court in the prior appeal hold or even intimate that liability had been determined. Our decision merely recognized that the matter had not been mooted by the extinguishment of the question concerning payment of the vouchers. We stated:

"While it is apparent that one of the central issues in this case, the propriety of ordering Lincoln to disburse certain sums in accordance with the construction loan

504–05, 73 S.Ct. 807, 808, 97 L.Ed. 1182 (1953). See also Restatement of Judgments, § 41, comment c; cf. *Conerty v. Litzinger,* 322 Pa. 188, 185 A. 294 (1936).

agreement, is now moot, it does not follow that the cause ought to be dismissed altogether."

. . . . . . . .

"[T]here is still the possibility that the court could grant Keystone some sort of relief, the question whether further relief should be granted is initially for the trial court to decide."

439 Pa. at 448, 266 A.2d at 650. Remanding the case, we said the question was "whether further relief should be granted;" we did not say the question was "what relief should be granted."

The procedure by which the action was split was obviously unorthodox.[8] Ordinarily a judgment in an action disposes of the entire cause of action.[9] But there is no valid reason why, when the parties can expeditiously resolve one issue in an action, they cannot consent to a judgment on that issue and preserve their right to fully litigate the other issue.[10]

---

8. The usual procedure, of course, is for the judgment to dispose of the entire action. Cf. 1 Goodrich-Amram, Standard Pennsylvania Practice § 1020(a)–1 at 138: "But the plaintiff may not split one action into several." The procedure employed here, however, is similar to that allowed by Pa.R.Civ.P. 1037, 1520 and 1530. See 2 Goodrich-Amram Standard Pennsylvania Practice § 1520–3 at 102:

> "[A]cts or payments can be directed in limine even before the final decree where this is necessary to prevent injustice. This is similar, in principle, to the practice, in actions of law, of taking judgment for an amount admitted by the answer to be due with leave to proceed for the balance claimed."

See also id., § 1530(b)–1 at 131; 4 Corbin on Contracts § 957 at 844 et seq. (1951 ed.).

9. Note 4, supra.

10. A similar situation was presented in *Hook v. Hook & Ackerman, Inc.*, 383 Pa. 67, 117 A.2d 714 (1955). In that case plaintiff sued for an accounting of royalties due under a licensing agreement. In its answer defendant admitted that $18,000 was due. The court entered a judgment for the amount due and ordered a further accounting as to the matters still in dispute. Defendant

It has never been ascertained that the vouchers were payable at the time Lincoln refused payment, and it therefore cannot be said that there has been an adjudication or binding determination that Lincoln had violated its duty to perform under the terms of the contract. That must yet be determined in a further proceeding.[11]

Order of the Superior Court reversed. Case remanded for further proceedings consistent with this opinion.

JONES, C. J., and POMEROY, J., concur in the result.

argued that the judgment which had been entered settled the entire claim. This Court held

"It was proper for the court to enter the original judgment for the amount then admitted to be due and at the same time order an accounting for all further sums then in controversy. . . ."

383 Pa. at 69, 117 A.2d at 715. Similarly, judgment here was entered on one issue and the other reserved for later determination. Though such splitting of actions is not favored it is not impermissible when the parties and the court agree on that method of adjudicating the action. Cf. *Blydenstein v. Haseltine,* 140 Pa. 120, 21 A. 306 (1891); *Sanwick v. Puget Sound Title Insurance Co.,* 70 Wash.2d 438, 423 P.2d 624 (1967); *Cokins v. Frandsen,* 141 N.W. 2d 796 (N.D.1966); *Zimmerman v. Bankers Life & Casualty Co.,* 324 Ill.App. 370, 58 N.E.2d 267 (1944); *Low v. Low,* 177 Mass. 306, 59 N.E. 57 (1901); *Union Pacific R. Co. v. Chicago R. I. & P. R. Co.,* 164 Ill. 88, 45 N.E. 488 (1896). See generally Annot., 38 A.L.R.3d 323 (1965).

11. Although the prior proceeding in this action did not determine that Lincoln was liable for breach of the agreement, specific issues concerning the interpretation of the contract may have been finally litigated in connection with the July 18 and October 6 decrees which were not appealed. As to issues actually determined in the prior proceeding, the parties are now estopped from relitigating them. Thus, though there is no res judicata, there may be collateral estoppel as to certain issues. See *Lawlor v. National Screen Service* Corp., 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L. Ed. 1122 (1955):

"[U]nder the doctrine of res judicata a judgment 'on the merits' in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action. Under the doctrine of collateral estoppel . . . such a judgment precludes relitigation of issues actually litigated and determined in the prior suit, regardless of whether it was based on the same cause of action as the second suit."