522 A.2d 1115

**Shirley A. COLEMAN, Appellant,**

v.

**Harrison W. COLEMAN, Appellee.**

**Shirley A. COLEMAN, Appellant,**

v.

**Harrison W. COLEMAN, Appellee.**

Superior Court of Pennsylvania.

Argued April 7, 1986.

Filed March 16, 1987.

448

Jackson M. Sigmon, Bethlehem, for appellant.

Gus Milides, Easton, for appellee.

Irving W. Coleman, Philadelphia, for appellee.

Before CIRILLO, President Judge, and BROSKY, ROWLEY, MONTEMURO, BECK, TAMILIA, KELLY, POPOVICH and JOHNSON, JJ.

BECK, Judge:

Appellant Shirley Coleman and appellee Harrison Coleman were married in 1955. Wife filed a complaint in divorce in Pennsylvania in May, 1983, seeking dissolution of the parties' marriage, equitable distribution of marital property, and counsel fees, costs, and expenses. In his answer to the complaint, husband admitted that no prior action had been initiated in Pennsylvania, but averred that a divorce suit, in which he was the plaintiff, was pending in Nevada. In the Pennsylvania action the court in September 1983 established an escrow account pursuant to a stipulation of counsel, to provide security for husband's appearance at future proceedings and satisfaction of wife's equitable distribution claims in the Pennsylvania action.

On May 8, 1984, both parties appeared before the Nevada Court which entered a divorce decree. The decree, inter alia, reserved wife's right to pursue her economic claims in Pennsylvania.

The decree in pertinent part provided:

IT IS FURTHER ORDERED, ADJUDGED AND DE-CREED *that the Plaintiff shall transfer and convey by appropriate deed to the Defendant all of his right, title and interest in and to the marital home* located in the State of Pennsylvania thereby vesting the property in the name of the Defendant as her sole and separate property absolutely;

IT IS FURTHER ORDERED, ADJUDGED AND DE-CREED *that the Plaintiff shall pay to the Defendant the sum of $25,000.00 in lieu of Nevada alimony, and without prejudice to the Defendant's rights to pursue any relief in the State of Pennsylvania relative to such*

*matters and/or property* within the jurisdiction of the Pennsylvania Domestic Relations Court;

IT IS FURTHER ORDERED, ADJUDGED AND DE-CREED *that the Plaintiff shall pay to the Defendant's attorney,* Jack G. Perry, Esquire, the total sum of $1,500.00 as and *for attorney's fees in this cause,* as well as $41.00 in reimbursement for costs....

(emphasis added).

In response to wife's assertion of her economic claims in Pennsylvania the Northampton County Court of Common Pleas disposed of the pending Pennsylvania divorce action in its order of August 7, 1984, holding that the entry of a foreign divorce decree in a proceeding in which both parties appeared precluded wife from pursuing any form of economic relief in Pennsylvania.

After wife filed her notice of appeal from the order of August 7, 1984, the trial court on October 10, 1984 granted husband's motion to terminate the escrow account. Wife appealed this second order also. The appeals have been consolidated and both are before us.

The primary issue on appeal is whether under the Pennsylvania Divorce Code [1] wife is barred from seeking equitable distribution and counsel fees because of the adjudication in the Nevada divorce proceeding in which she appeared. We conclude that she is not, and therefore vacate and remand.

A threshold inquiry is whether the trial court had subject matter jurisdiction to address wife's claims. It is well established that the test of subject matter jurisdiction is simply the competency of the trial court to hear and determine controversies of the general class at issue; i.e., whether the court has power to enter into the inquiry, and not whether it will ultimately decide that it can or cannot grant relief in the particular case before it. *In re Jones & Laughlin Steel Corp.,* 488 Pa. 524, 412 A.2d 1099 (1980); *Cheng v. Cheng,* 347 Pa.Super. 515, 500 A.2d 1175 (1985);

1. The Divorce Code ("Code"), Act of April 2, 1980, P.L. 63, No. 26, 23 P.S. § 101 *et seq.*

*Alpha Tau Omega Fraternity v. University of Pennsylvania,* 318 Pa.Super. 293, 464 A.2d 1349 (1983). Furthermore, "[p]arties to an action cannot ... confer jurisdiction upon a court for which jurisdiction would otherwise be lacking." *Cheng,* 347 Pa.Super. at 519, 500 A.2d at 1177; *see also T.C.R. Realty, Inc. v. Cox,* 472 Pa. 331, 372 A.2d 721 (1977); *Maxton v. Philadelphia Housing Authority,* 308 Pa.Super. 444, 454 A.2d 618 (1982); *Zvonik v. Zvonik,* 291 Pa.Super. 309, 435 A.2d 1236 (1981).

Under the Divorce Code the trial court clearly has the power to dispose of wife's claims for equitable distribution and counsel fees. The jurisdictional breadth of Pennsylvania courts over economic issues incident to a foreign divorce decree has been delineated by this court in *Cheng,* which pointed out that under Sections 102(a) and (b) of the Divorce Code, the policy of the Commonwealth is to:

(a)

(1) Make the law for legal dissolution of marriage effective for dealing with the realities of matrimonial experience.

. . . .

(4) Mitigate the harm to spouses ... caused by the legal dissolution of the marriage.

. . . .

(6) *Effectuate economic justice between parties who are divorced ... and insure a fair and just determination and settlement of their property rights.*

(b) The objectives set forth in subsection (a) shall be considered in construing the provisions of this act and shall be regarded as expressing the legislative intent. 23 P.S. § 102(a), (b) (emphasis added).

In order to implement the Legislature's intent, Sections 301(a)(1) and 401(c) of the Code grant the courts of this Commonwealth broad jurisdiction over the economic issues related to divorce. *Cheng,* 347 Pa.Super. at 519–21, 500 A.2d at 1178.

## § 301 Jurisdiction

(a) *The courts of this Commonwealth* as defined in section 104 shall have original jurisdiction in cases of divorce and ... where they have jurisdiction, *shall determine in conjunction with any decree granting a divorce ... the following matters,* where raised in the complaint or the answer and issue appropriate decrees or orders with reference thereto and may retain continuing jurisdiction thereof:

(1) *The determination and disposition of property rights and interests between spouses....*

## § 401 Decree of court

(c) *In all matrimonial causes, the court shall have full equity power and jurisdiction* and may issue injunctions or other orders which are necessary to protect the interests of the parties or to effectuate the purposes of this act, and *may grant such other relief or remedy as equity and justice require* against either party....

23 P.S. §§ 301(a)(1), 401(c) (emphasis added).

In addition, Section 505 specifically provides jurisdiction to Pennsylvania courts to grant *alimony* to a defendant in a foreign divorce action where the defendant has not appeared in the foreign proceeding:

§ 505 *Alimony where a foreign ex parte divorce or annulment*

Whenever a person who was a resident of this Commonwealth at the time such person was a defendant or respondent in a foreign *ex parte* action for annulment or divorce petitions a court of this Commonwealth *for alimony* and establishes the need therefor, *such court,* if it has jurisdiction over the person or property of the other party, *may order that such alimony be paid in the same manner and under the same conditions and limitations which pertain when alimony* is sought as provided in this chapter.

23 P.S. § 505 (emphasis added); *Sohmer v. Sohmer,* 318 Pa.Super. 500, 505–07, 465 A.2d 665, 668 (1983). It is important to note, however, that Section 505 is not the comprehensive definition of the trial court's authority,

which is contained in Sections 301 and 401(c), but rather is "[a] grant of a specific form of relief in particular circumstances." *Cheng*, 347 Pa.Super. at 522, 500 A.2d at 1179.[2]

▮▮▮ The relevant sections of the Code, 301, 401 and 505, grant broad jurisdiction to Pennsylvania courts. No section of the Code limits a court's authority to address the equitable distribution and counsel fee claims of a litigant in a foreign divorce proceeding, regardless of whether or not that litigant appeared in the foreign forum. We must therefore abide by the established principle that if the legislature has shown no indication of its intention to limit jurisdiction, the act in question must be construed as imposing no limitation. *In re Jones & Laughlin Steel Corp.*, 263 Pa.Super. 378, 398 A.2d 186, *aff'd*, 488 Pa. 524, 412 A.2d 1099 (1979).

The fact that the Nevada court had subject matter jurisdiction and exercised it to a limited degree did not extinguish the statutory authority of a Pennsylvania court to dispose of the matters at issue.

A determination that the Pennsylvania court has subject matter jurisdiction, however, does not end our inquiry. We must now examine whether the wife is barred by the doctrine of res judicata from asserting her claims in Pennsylvania.

Res judicata, or claim preclusion, applies where the cause of action in one suit is identical to that involved in a prior final judgment. The doctrine holds that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive of the rights of the parties and their privies and bars subsequent actions involving the same claim, demand, or cause of action and issues determined therein.

---

2. We recognize that the court in *Sohmer* focused on Section 505 not as a specific grant of relief in particular circumstances as did the court in *Cheng*, but rather viewed the provision as a bar to such relief. The differences between the two cases are reconcilable. Firstly, the two readings of Section 505 are not mutually exclusive. Secondly, jurisdiction in *Cheng* was grounded in Section 401(c), a section of the statute not construed in *Sohmer*. *Cheng*, 347 Pa.Super. at 521, n. 1, 500 A.2d at 1179 n. 1.

*Sea-Land Services, Inc. v. Gaudet*, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974); *Keystone Building Corp. v. Lincoln Savings & Loan Assoc.*, 468 Pa. 85, 360 A.2d 191 (1976); *In re Jones & Laughlin Steel Corp.*, 328 Pa.Super. 442, 477 A.2d 527 (1984); *LeBeau v. LeBeau*, 258 Pa.Super. 519, 393 A.2d 480 (1978); *see also Noetzel v. Glasgow, Inc.*, 338 Pa.Super. 458, 487 A.2d 1372 (1985); *Consolidation Coal Company v. Dist. 5, United Mine Workers*, 336 Pa.Super. 354, 485 A.2d 1118 (1984); Restatement (Second) of Judgments §§ 18, 19, 24 (1982); Scoles, Conflict of Laws, § 24.1 at 917 (1984). Res judicata generally bars relitigation of issues raised, as well as arguments that might have been raised but were not. *Noetzel*, 338 Pa.Super. at 466–67, 487 A.2d at 1376; *Consolidation Coal Co.*, 336 Pa.Super. at 361–63, 485 A.2d at 1122. Moreover, res judicata is "a part of the 'national jurisprudence' by virtue of the full faith and credit clause of the federal constitution," and may thereby bar relitigation of a claim based on a judgment rendered in a foreign forum. *Riley v. New York Trust Co.*, 315 U.S. 343, 62 S.Ct. 608, 86 L.Ed. 885 (1942); *Noetzel*, 338 Pa.Super. at 466–67, 487 A.2d at 1376.

This court articulated the policy underlying the doctrine of res judicata in *Consolidation Coal Co. v. Dist. 5, United Mine Workers:*

> The *res judicata* doctrine is a judicial creation aimed at preventing a multiplicity of suits. It protects a party from the vexation of having to defend itself against a claim for which a final judgment has already been entered. Furthermore, it serves the public interest by keeping the courts clear of disputes that have been decisively resolved. *But as a matter of fairness to the party which believes it has a valid claim,* the doctrine is not applied unless there in fact was a previous action in which the party did present, or had the opportunity to present, its claim. Hence, the general rule is that the doctrine of *res judicata* cannot be applied to preclude a claim absent a final judgment on the merits in a previous action.

336 Pa.Super. at 362, 485 A.2d at 1122 (emphasis added; citations omitted); *see also LeBeau*, 258 Pa.Super. at 523–25, 393 A.2d at 482.

The determination of whether a final judgment on the merits has been entered in a prior suit may depend in large measure upon how unfair it would be to the defendant in the second action to permit relitigation. *Scoles, supra*, at § 24.24. One commentator has noted that in deciding whether a claim should be precluded "all relevant circumstances [must be evaluated] including the extent to which the parties in the prior action had a *full* opportunity there to litigate, and actually litigated, the issues of their concern." Smit, *International Res Judicata and Collateral Estoppel in the United States*, 9 U.C.L.A.L.Rev. 44, 59 (1962) (emphasis added).

 By ordering husband to convey his interest in the marital home to wife and to pay her counsel fees incurred in Nevada, the Nevada Court's decree addressed to some degree the issues of property distribution and counsel fees, costs and expenses. Nonetheless, the doctrine of res judicata does not preclude an equitable division of property or claims for counsel fees in Pennsylvania because of two key facts in this case: (1) the parties agreed to reserve wife's right to seek further economic relief in Pennsylvania; and (2) the Nevada decree was entered "without prejudice to [wife's] rights to pursue any relief in the State of Pennsylvania relative to such matters [alimony] and/or property...." [3]

3. In this case we are not called upon to decide whether a defendant in a foreign divorce suit would be entitled to pursue a particular economic claim in Pennsylvania if the foreign forum had failed to dispose of the claim entirely.

 We believe, however, that petitions for equitable distribution, alimony, and counsel fees are separate claims because they involve considerably different inquiries and types of proof. Thus, an adjudication in a foreign forum which fails to address any one of them cannot constitute an adjudication on the merits of that claim, and consequently cannot preclude a subsequent action for that form of relief in Pennsylvania. This approach best serves the legislative mandate of the Code to "effectuate economic justice between parties." 23 P.S. § 102(a)(6).

Since the Nevada Court disposed of some of the wife's economic claims, it could be argued that permitting wife to pursue additional economic relief in Pennsylvania would constitute splitting a cause of action. The courts of this Commonwealth have long adhered to the generally accepted view disfavoring the splitting of claims. *Spinelli v. Maxwell*, 430 Pa. 478, 243 A.2d 425 (1968); Restatement (Second) of Judgments § 24 (1982). Nonetheless, in some circumstances parties may be permitted to split a cause of action so that res judicata will not operate to bar the latter suit. *See Keystone Building Corp.*, 468 Pa. at 94–95 n. 10, 360 A.2d at 196 n. 10; *Hook v. Hook & Ackerman, Inc.*, 383 Pa. 67, 117 A.2d 714 (1955). The Restatement of Judgments (Second) has framed the rule as follows:

When any of the following circumstances exists, the general rule of § 24 does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:

(a) The parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein; or

(b) The court in the first action has expressly reserved the plaintiff's right to maintain the second action. . . .

Restatement (Second) of Judgments § 26(1) (1982).

■ The law of Pennsylvania is in accord with the approach taken by the Restatement. For example, we note that consent decrees may have res judicata effect. *Pennsylvania Human Relations Commission v. Graybill, Inc.*, 482 Pa. 143, 393 A.2d 420 (1978); *Jones & Laughlin*, 328 Pa.Super. at 454–55, 477 A.2d at 533. However, if the parties did not intend the consent decree to act as an adjudication of the merits of the subsequent claim, then the decree may not bar the later action. *Keystone Building Corp.*, 468 Pa. at 92–94, 360 A.2d at 195 (consent decree enforcing terms of contract not bar to later suit for damages); *Jones and Laughlin*, 328 Pa.Super. at 456–57, 477 A.2d at 534. Similarly, a stipulation entered into by the

parties with the intention of limiting the scope of the proceedings may effectively leave open other issues not addressed for future determination. *See, e.g., Fogel Refrigerator Co. v. Oteri*, 398 Pa. 82, 86, 156 A.2d 815, 817–18 (1959) (stipulation by counsel limiting petition to open judgment to issue of forgery made judgment res judicata only to defense of forgery). Thus, whether a plaintiff may be permitted to bring a second suit on the undecided claims in the first action, and thereby split a cause of action, turns on the question of the parties' and the court's intent; i.e., where the parties and the court did not fully address the claims in the first suit did they intend the judgment not to be a final adjudication of all the issues? The conduct of the parties and the court, and the language of the decree, may be considered in ascertaining such intent.[4] *Keystone Building Corp.*, 468 Pa.Super. at 92–94, 360 A.2d at 195.

Furthermore, we are bound by the Full Faith and Credit clause of the United States Constitution, art. IV, § 1, to take this position. *See, e.g., Morris Lapidus Associates v. Airportels, Inc.*, 240 Pa.Super. 80, 82–83, 361 A.2d 660, 662 (1976) (allocatur denied); *see also Mulholland v. Pittsburgh National Bank*, 418 Pa. 96, 209 A.2d 857 (1965) (determination of competency valid where Florida court reserved future dispositions for adjudication in Pennsylvania); *Cheng*, 347 Pa.Super. at 518–19, 500 A.2d at 1177 (reservation of economic issues for Pennsylvania recognized despite preservation of action in which claims raised in South Carolina).

The record in this appeal firmly establishes that the parties and the court did not intend that the Nevada decree would fully resolve the economic issues of the parties. Consequently, the decree dealt with the status of the parties and certain specified economic claims and reserved other economic claims for later resolution in Pennsylvania. The husband admits that he entered into an agreement with

4. We do not address the following issue because it is not before us: whether, in the *absence* of an agreement by the parties or a specific reservation by the foreign forum a Pennsylvania court may determine the economic issues incident to a divorce where both parties have appeared in the foreign proceeding.

wife whereby the conveyance to her of his interest in the marital home under the Nevada decree would not affect her right to pursue other economic relief in Pennsylvania. (Record at 54a). The Nevada court incorporated the parties' agreement containing the reservation into its decree, and specifically limited its award of counsel fees and costs to those incurred in the Nevada action. The conduct of the parties and the court, and the language of the decree itself, indicates that neither the court nor the parties intended the decree to act as an adjudication of the claims reserved for later disposition in Pennsylvania; therefore the Pennsylvania court having jurisdiction may dispose of those economic issues which the Nevada court reserved and did not resolve.

■ The result we reach promotes the policies underlying both the Divorce Code and the doctrine of res judicata. The Code was enacted not only to effectuate economic justice, but also to harmonize Pennsylvania's domestic relations law with the laws of other states. *Chaney v. Chaney*, 343 Pa.Super. 77, 493 A.2d 1382 (1985).

The res judicata values of judicial economy and fairness to the parties are also well-served by our approach. As the Supreme Court of Pennsylvania noted in *Keystone:*

[T]here is no valid reason why, when the parties can expeditiously resolve one issue in an action, they cannot consent to a judgment on that issue, and preserve their right to fully litigate the other issue.

468 Pa. at 94, 360 A.2d at 196 (footnote omitted).

■ In addition, we need not be concerned with subjecting husband to the inconvenience of relitigation; when the issues of the first action have not been fully litigated and a final judgment has not been entered, the underlying reasons for application of the res judicata doctrine are absent. *See Consolidation Coal*, 336 Pa.Super. at 361–63, 485 A.2d at 1122. Conversely, viewing the Nevada decree as foreclosing wife's rights to seek economic relief in Pennsylvania would lead to an unjust and harsh result. We cannot allow one party to use an agreement into which he freely entered

to abandon it and thereby take advantage of the other party.

By agreeing with husband to limit the scope of the Nevada proceeding, wife gave up an opportunity to obtain in Nevada a judgment on the merits of the issues she now raises. If the parties and the Nevada court intended the Nevada decree to result in a waiver of wife's claims, then such an intention should have been expressed unequivocally.

We therefore vacate the order of August 7, 1984 at No. 2334 and remand for proceedings to determine wife's equitable distribution and counsel fee claims. In so doing, the trial court should consider the awards already made by the Nevada court.

In appeal No. 3016 from the trial court's order of October 10, 1984, we hold that under Pa.R.A.P. 1701 the trial court lacked jurisdiction to act further once appellant's notice of appeal in No. 2443 had been filed. *Mandia v. Mandia*, 341 Pa.Super. 116, 491 A.2d 177 (1985); *Prozzoly v. Prozzoly*, 327 Pa.Super. 326, 475 A.2d 820 (1984); *Gordon v. Gordon*, 293 Pa.Super. 491, 439 A.2d 683 (1981), *aff'd per curiam* 498 Pa. 570, 449 A.2d 1378 (1982). The trial court thus erred by terminating the escrow account while appellant's appeal from the dismissal of her equitable distribution and counsel fee claims was pending. Accordingly, we vacate the trial court's order and remand.

The orders entered at Nos. 2334 and 3016 are vacated. We remand for proceedings consistent with this opinion. Jurisdiction relinquished.

CIRILLO, President Judge files a dissenting opinion.

TAMILIA, J., files a dissenting opinion, in which POPOVICH, J., joins.

CIRILLO, President Judge, dissenting:

I dissent from the decision to remand this case for further proceedings on the former wife's claims for equitable distribution and other economic relief under the Divorce

Code. By participating in the Nevada divorce with her husband, and permitting that divorce to become final, the wife gave up her right to litigate in Pennsylvania property issues which the Nevada court could have determined.

Section 301 of the Code provides that

(a) The courts of this Commonwealth ... shall have original jurisdiction in cases of divorce ... and, where they have jurisdiction, *shall determine in conjunction with any decree granting a divorce* ... the following matters ...:

(1) The determination and disposition of property rights and interests among spouses, ... and the order of any alimony, alimony pendente lite, counsel fees, or costs authorized by law.

23 P.S. § 301 (emphasis added). When the Nevada court granted the parties' final decree in divorce, the power of the Pennsylvania court to grant financial relief in the Pennsylvania divorce action was extinguished, because the court could no longer act "in conjunction with" the granting of a decree in divorce. Mrs. Coleman's full participation in the Nevada divorce proceedings eliminated her right to economic relief under the Pennsylvania Divorce Code; her property rights arising from the marital relation are terminated under 23 P.S. § 401(j), and her recourse, if any, is an action to partition the property held in common.

The exception to the Pennsylvania courts' lack of jurisdiction to proceed on economic claims in divorce actions after entry of a foreign divorce appears in section 505 of the Code, which permits the Pennsylvania courts to grant alimony to a Pennsylvania resident who has been subjected to a foreign divorce proceeding ex parte. Our court has noted that the Code might even offer other forms of economic relief, including equitable distribution of the marital property, such as Mrs. Coleman seeks, where the party asking for the relief has been the victim of an ex parte foreign divorce:

We note that even if Mr. Bell brings an *ex parte* divorce action in Nevada, his wife is not foreclosed from seeking alimony, child support and equitable distribution of mari-

tal property under Pennsylvania's New Divorce Code of 1980. *See* 23 P.S. § 101 *et seq.; Stambaugh v. Stambaugh,* 458 Pa. 147, 329 A.2d 483 (1974); *Sohmer v. Sohmer,* 318 Pa.Super. 500, 465 A.2d 665 (1983), petition for allowance of appeal denied January 20, 1984 [No. 608 E.D. Allocatur Docket 1983].

*Bell v. Bell,* 326 Pa.Super. 237, 252 n. 2, 473 A.2d 1069, 1077 n. 2 (1984) (dictum). However, as the court clearly held in the *Sohmer* case, the doctrine of "divisible divorce" "is limited to cases of foreign, *ex parte* divorces and does not apply where, as here, the defendant has appeared in the foreign proceeding." 318 Pa.Super. at 507, 465 A.2d at 668. Mrs. Coleman has forfeited the protection of the doctrine of "divisible divorce" by appearing in the foreign forum and litigating her divorce there.

In *Cheng v. Cheng,* 347 Pa.Super. 515, 500 A.2d 1175 (1985), we held that the broad policy of the Divorce Code to "[e]ffectuate economic justice between parties who are divorced," 23 P.S. § 102(a)(6), permitted the Pennsylvania court to exercise jurisdiction over and adjudicate Mrs. Cheng's economic claims in a Pennsylvania divorce action despite her participation in a South Carolina court's decree granting a divorce in Mr. Cheng's earlier-filed action. However, in *Cheng* we found the South Carolina divorce proceeding "essentially ex parte" as to the economic issues, "in operation if not in form," 347 Pa.Super. at 526, 500 A.2d at 1181, because although Mrs. Cheng had appeared through counsel in the South Carolina action and filed a counterclaim requesting economic relief, the South Carolina court refused to decide the economic issues, stayed proceedings on the counterclaim, and "specifically conditioned its issuance of a divorce decree on the parties' agreement to resolve their economic and property issues in Pennsylvania." *Id.,* 347 Pa.Superior Ct. at 524, 500 A.2d at 1180. Consequently, Mr. Cheng filed a stipulation in the Pennsylvania court consenting to its resolution of the economic matters, Mrs. Cheng withdrew her objections to Mr. Cheng's motion to sever the divorce claim from the counter-

claim in the South Carolina court, and the South Carolina court granted the divorce, preserving its jurisdiction over the matter pending the outcome of the Pennsylvania proceedings on the economic issues. Had it not been for Mrs. Cheng's agreement to drop her objections to severance, there would have been no South Carolina divorce decree to hamper the Pennsylvania court's jurisdiction, and so it would have been particularly unfair to deny her the right to litigate the economic claims in Pennsylvania. Even more importantly, though, the Pennsylvania court in *Cheng* was acting "in conjunction with" a divorce decree—the South Carolina decree that was specifically conditioned on and left open pending the Pennsylvania court's resolution of the economic issues.

The situation is different where both parties participate in a foreign divorce that becomes final, and then attempt to obtain the jurisdiction of a Pennsylvania court to decide unresolved economic issues. The Pennsylvania court is no longer deciding a divorce dispute, and I agree with my Brother Tamilia that parties cannot step across state lines at their own pleasure to obtain a divorce, then expect a Pennsylvania court to take up the issues ancillary to divorce when there no longer is a divorce pending before it. I also agree with my Brother Tamilia that the doctrine of divisible divorce might be applicable to divorce proceedings that are not ex parte, where the parties first obtain an order of bifurcation to litigate the divorce and economic claims in separate fora. *See generally Wolk v. Wolk*, 318 Pa.Super. 311, 464 A.2d 1359 (1983) (authority of court to bifurcate divorce from other claims implicit in § 401(b) of the Divorce Code and Pa.R.C.P. 1920.52(c)), *allowance of appeal denied*, 318 Pa.Super. 311, 464 A.2d 1359 (1984). Where I part with my learned colleague is in his belief that *Cheng* was not a bifurcated divorce; it was, only the South Carolina court, rather than the Pennsylvania court, ordered the severance, retaining jurisdiction over the divorce until all economic matters were resolved in this State.

The Colemans, however, did not proceed in this way, instead choosing to litigate their entire divorce in Nevada, returning to the Pennsylvania forum only after there was no longer a divorce left to litigate. The parties' attempt to reserve the right to litigate economic issues in Pennsylvania by agreeing to a clause in the Nevada decree that it was "without prejudice" to Mrs. Coleman's right to pursue economic relief in our courts is invalid. "The parties' stipulations did not confer jurisdiction on a Pennsylvania court which would not otherwise exist." *Cheng*, 347 Pa.Super. at 525, 500 A.2d at 1180. Since there is no divorce pending, there is no jurisdiction in the Pennsylvania courts to litigate economic claims in divorce. I would affirm the decision of the trial court dismissing this action.

TAMILIA, Judge, dissenting:

I dissent and would view this conflicts of law situation in the following fashion.

When the Pennsylvania divorce is filed prior in time to the foreign proceeding and both parties are Pennsylvania domiciliaries, there are a number of options available to the local petitioner. An injunction against proceeding may be requested against the respondent to prevent out-of-state action.[1] Upon failure to comply, the court may impose sanctions, issue protective Orders as to the property, and ultimately treat the Nevada divorce as a nullity as to its effect on property and proceed to equitable distribution.

If the Nevada divorce was filed first in time (as here), and/or there is participation *actively* in the Nevada divorce by the respondent, jurisdiction is acquired by the Nevada Court over the *marriage status* and it is in that court that the issues must be resolved. *Coe v. Coe*, 334 U.S. 378, 68 S.Ct. 1094, 92 L.Ed. 1451 (1948); *Sherrer v. Sherrer*, 334 U.S. 343, 68 S.Ct. 1087, 92 L.Ed. 1429 (1948). Pennsylvania

1. This is assuming, of course, that the husband was not an out-of-state domiciliary since anti-suit injunctions may not properly issue where it has been established that the enjoined spouse is a domiciliary of another state. *Stambaugh v. Stambaugh*, 458 Pa. 147, 329 A.2d 483 (1974); *Smith v. Smith*, 364 Pa. 1, 70 A.2d 630 (1950).

equitable distribution depends on the marital status existing at the time a claim is made for equitable distribution. The Pennsylvania Court has no jurisdiction to enter a divorce decree, or any remedies ancillary thereto, if it has already been entered in a foreign jurisdiction. *Perrin v. Perrin,* 408 F.2d 107 (3rd Cir.1969). The Divorce Code, 23 P.S. § 301 Jurisdiction, permits determination of certain property matters (equitable distribution) and alimony only in cases where it has jurisdiction to grant the divorce. While a divorce may be granted prior to a decree of distribution, through bifurcation, no claim for equitable distribution can be made after a decree of divorce is final. 23 P.S. § 401(j); *Bastion v. Bastion,* 324 Pa.Super. 569, 472 A.2d 226 (1984). After a divorce decree is entered, the only recourse is partition. Once the foreign divorce decree is recognized or a domestic decree is entered, the power over property for equitable distribution purposes is gone. *Bastion, supra.* Neither the Nevada courts or the parties by agreement can preserve that power or impose upon the court the duty to hear those matters.

In the situation in which the foreign divorce action is ex parte, the Pennsylvania respondent admittedly has few options. The alternatives to contesting the Nevada divorce are: do nothing and contest validity of the divorce in Pennsylvania, and if successful, thereafter pursue a Pennsylvania divorce and equitable distribution; contest the Nevada divorce on jurisdictional grounds only, in Nevada, or in federal courts on the basis of diversity, preserving the right to proceed in Pennsylvania on the merits. *Williams v. North Carolina (II),* 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945).

The majority would permit participation in the Nevada divorce and would consider it to have the same effect that would reasonably follow if appellant had been first in time in filing in Pennsylvania, followed by suitable sanctions to protect her interest, or had not participated in the Nevada action but successfully contested jurisdiction of the Nevada Court and the validity of the Nevada Decree. Appellant

may elect one or the other approach, but having done neither and having elected to participate actively on the merits in Nevada proceeding, she loses any benefit that might have been derived.

The legislative intent is clear in providing for the alternative nature of equitable distribution. It provides, additionally, for an alternative evaluation of property as matrimonial property only for the purpose of division pursuant to a divorce action.

23 P.S. § 401(d)

(d) In a proceeding for divorce or annulment, the court shall, upon request of either party, equitably divide....

. . . .

(e) For purposes of this chapter only, "marital property" means....

If it had intended to preserve equitable distribution on foreign decrees (which would be a contradiction in terms as distribution may not be claimed after a decree of divorce is entered, *Bastion, supra* ), it would have provided a remedy precisely as is the case for alimony. *See* 23 P.S. § 505 Alimony where a foreign ex parte divorce or annulment. Even with alimony, it is made explicitly clear that the foreign decree must be *ex parte.* Where the divorce is *participatory, all* states having the power to make alimony awards, the court selected by the parties to hear the divorce is empowered and should be requested to enter an alimony decree. Such a decree is enforceable in Pennsylvania pursuant to section 506 *Enforcement of foreign decrees,* or pursuant to RURESA, 42 Pa.C.S.A. § 6776. There is no recourse for a participatory divorce, where the foreign court failed to enter an alimony Order, and as to property, the remedies available are those existing without reference to section 401(d). The doctrine of divisable divorce is applicable only to the extent that remedies are available in the state of domicile, *see Stambaugh v. Stambaugh,* 458 Pa. 147, 329 A.2d 483 (1974) (any change in Pennsylvania divorce law, with respect to provisions for alimony following

divorce from bond of matrimony, must be made by the legislature), and protects primarily a party victimized by an ex parte divorce. *See Sohmers, infra.* To permit otherwise would be an invitation to fragment divorce and domestic relations proceedings interminably producing hardship to the parties and confusion in the courts.

The reasons are clear. In *Gantz v. Gantz,* 338 Pa.Super. 528, 488 A.2d 17 (1985), we held our legislature has determined that where a divorce is pursued, all matters to be considered should be heard in the same court, and whenever possible, by the same judge or master. This rule is no different for an out-of-state divorce than for a domestic divorce. As to conflicts of laws, admittedly the best state (or county) to determine the issue concerning division of property is the one where the property is situated. This is not, however, an overwhelming impediment as the state where the divorce is sought should be able to apply the law of the state where the property is located. If the parties are willing to trust their marriage dissolution to a court other than the home state, which is the state of paramount interest, how can they be heard to complain of its power and ability to resolve property issues in that forum. Forum shopping is not new, intra-state as well as interstate; to diminish it and control it, the law and rules concerning domestic relations actions must be construed so that they are not rendered impotent. To· eliminate the abominations of forum shopping and child snatching that arose in custody actions, the Commission on Uniform Laws promulgated, and most states have joined in, the Uniform Child Custody Jurisdiction Act, 42 Pa.C.S.A. § 5341 *et seq.* While nothing similar has developed in the law of divorce (except intrastate, *see Gantz, supra* ), we have lessened the problem in support cases with the Revised Uniform Reciprocal Enforcement of Support Act (RURESA) (1968) 23 Pa.C.S.A. § 4501 *et seq.*, and in alimony by universal application of sections such as 23 P.S. § 505 Alimony where a foreign ex parte divorce or annulment, and permitted registration of foreign alimony Orders. *Sohmer v. Sohmer,* 318 Pa.Super. 500, 465 A.2d 665 (1983) correctly applied the law in its disposi-

tion of an alimony claim arising out of a participatory divorce in Virginia by denying the right to proceed in Pennsylvania, after the decree by the Virginia court. *Cheng v. Cheng*, 347 Pa.Super. 515, 500 A.2d 1175 (1985) distinguished *Sohmers* by permitting determination of equitable distribution claims because the *property* was located in Pennsylvania (support and alimony are in personam actions). *Cheng* is distinguished from *Coleman* in that there was a prior existing divorce action, coupled with a stipulation from the South Carolina action, preserving the right to proceed with equitable distribution in Pennsylvania. The jurisdiction of the Pennsylvania Court was not ousted, at least initially; however, a South Carolina divorce decree terminated the court's power to act in granting a divorce as effectively as if it had been a local decree. *Williams v. North Carolina (I)*, 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279 (1942). The decree was entered on April 20, 1982, whereas the hearing in Pennsylvania on the economic issues did not occur until April 13, 1983. There is no question of the husband's status as a South Carolina domiciliary as he had been there almost two years (located there July 1980) before entry of the decree. The South Carolina decree is unassailable. Under the Divorce Code, separation of the divorce and property matters can only be accomplished through a court Order of bifurcation. *See* 23 P.S. § 401(b); 42 Pa.R.C.P. 1920.52(c); *Pastuszek v. Pastuszek*, 346 Pa.Super. 416, 499 A.2d 1069 (1985); *Wolk v. Wolk*, 318 Pa.Super. 311, 464 A.2d 1359 (1983). This did not occur in either *Cheng* or *Coleman*. This may have been inadequate in either case, where the divorce action was already filed in the foreign jurisdiction. If there had been a proper Order of bifurcation, preceded by the mandatory hearing, after a valid complaint in divorce had been filed, first in time, a good argument could be made that a subsequent foreign divorce decree did not prevent equitable distribution. However, as here, stipulation of the parties cannot confer that jurisdiction, when the only entry is pursuant to a complaint in divorce before the instant court, followed by a foreign divorce decree which incorporates a decree of distribution.

468

The Nevada decree entered on May 9, 1984, in pertinent part, is as follows:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the existing Support Order in the Court of Common Pleas of Northampton County, Pennsylvania, relative to the support of the minor daughter, Heidi Coleman, be and the same is hereby affirmed and adopted by this Court;

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Plaintiff shall transfer and convey by appropriate deed to the Defendant all his right, title and interest in and to the marital home located in the State of Pennsylvania thereby vesting the property in the name of the Defendant as her sole and separate property absolutely;

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Plaintiff shall pay to the Defendant the sum of $25,000.00 in lieu of Nevada alimony, and without prejudice to the Defendant's right to pursue any relief in the State of Pennsylvania relative to such matters and/or property within the jurisdiction of the Pennsylvania Domestic Relations Court; ....

The Nevada Court did consider property issues and alimony and entered a decree to that effect. No rationale can justify failure to resolve any and all property and alimony matters therein. At least in *Cheng* there was a Pennsylvania divorce pending, and reservation by the foreign court of all property matters to be decided by the Pennsylvania Court.

In *Coleman,* there is no Pennsylvania divorce action and the only legal vehicle possible does not exist for purposes of entering such a decree.

Without the limited, explicit and unalterable proceedings detailed in the Divorce Code for equitable distribution of marital property, no legal means exists for such a distribution. The majority weaves an extensive legal stratagem for creating power in the court to decree equitable distribution

and alimony, when the legislature failed to grant that power. This, we may not do.

In this case, Mrs. Coleman would have been better off not to have gone to Nevada, but to have contested Nevada's jurisdiction in Pennsylvania under *Williams v. North Carolina (II), supra.* It appears Mr. Coleman is still here and has never acquired a bonifide Nevada domicile. This approach is given improved chances of success with recent United States Supreme Court rulings restricting long arm statutes and ex parte proceedings in foreign jurisdictions when minimum contracts have not been established. *See Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).[2] Also with what amounts to a national divorce property and alimony policy, no fault grounds being universally available, the relaxed approach to migratory divorce should now come under closer scrutiny. Mr. Coleman now has a valid divorce because of Mrs. Coleman's participation. Mrs. Coleman's position would have been stronger if she had initiated a Pennsylvania divorce *before* Mr. Coleman had initiated the Nevada divorce (including requests for injunctions, etc.) and if she had requested bifurcation, and whatever else necessary to preserve her right to pursue equitable distribution and alimony. Having failed that, she has been relegated to an action in partition pursuant to the Act of May 10, 1927, P.L. 884, § 1, 68 P.S. § 501 which converts a tenancy by the entireties into a tenancy in common of equal one-half shares after a divorce and permits either party to partition the property.

Likewise, had this been an ex parte divorce, a partial salvation of her position would have been achieved by proceeding for alimony under 23 P.S. § 505,[3] which permits

2. E. Roy Hawkins, *The Effect of Shaffer v. Heitner on the Jurisdictional Standard in Ex Parte Divorces,* Family Law Quarterly, Volume XVIII, no. 3, Fall 1984, p. 311.

3. **§ 505. Alimony where a foreign ex parte divorce or annulment**
Whenever a person who was a resident of this Commonwealth at the time such person was a defendant or respondent in a foreign ex parte action for annulment or divorce petitions a court of this Commonwealth for alimony and establishes the need therefor, such

filing for alimony in Pennsylvania when a foreign ex parte divorce granted in a sister state is in need. All of the relevant factors contained in 23 P.S. § 501 are to be considered and if the distribution of marital property was uneven and the wife's contribution was not adequately compensated, the alimony award could reflect this. It is not a substitute, however, for equitable distribution.

Underlying our entire discussion is the coherent and interelated structure of the Divorce Code and domestic relations law in general. The Divorce Code does not abrogate existing laws when there is no conflict and provides in section 103, Construction: "The provisions of this act, so far as they are the same as those of existing laws, are intended as a continuation of such laws...."

The existing law as to distribution of marital property is partition which comes into operation *after* a decree of divorce is entered. Section 508, *supra. See Marinello v. Marinello,* 354 Pa.Super. 471, 512 A.2d 635 (1986). Only when a divorce action has been filed, and a claim made for equitable distribution, followed by a hearing and determination prior to divorce (except when proper bifurcation was ordered), can section 401, permitting equitable distribution, apply. *Cheng* reaches for the right result but skirts the problem since there had been no Order of bifurcation severing the Pennsylvania divorce action from the alimony and distribution claims. It would be procedurally tenable for a divorce action to be instituted in Pennsylvania coupled with a claim for equitable distribution and alimony, to preserve those claims by Order of bifurcation and thereafter treat

court, if it has jurisdiction over the person or property of the other party, may order that such alimony be paid in the same manner and under the same conditions and limitations which pertain when alimony is sought as provided in this chapter. In the event that the other party from whom such alimony is sought cannot be located within this Commonwealth, the court may attach such of the tangible or intangible property of said party as is within the jurisdiction of the court in the manner provided by the Rules of Civil Procedure, except that no exemption shall apply. Such property shall thereupon be subject to the payment of alimony in the same manner as provided by law in actions for nonsupport. 1980, April 2, P.L. 63, No. 26, § 505, effective in 90 days.

the divorce, even if acquired in a foreign jurisdiction,' to have no bearing on the authority of this Court to resolve the collateral matters. To permit alimony and property matters to be disposed of after a valid decree in divorce, without bifurcation, destroys the integrity of the law which has been codified in the divorce statute and laboriously refined by case law. *See Bastion, supra.*

Stipulation (or savings clauses in a foreign divorce decree) cannot substitute for an Order of bifurcation. If such is permissible in foreign divorce cases, which are frequently suspect on their facts and findings, how much more appropriate would it not be in a domestic divorce action. Parties cannot stipulate between themselves to impose jurisdiction on the court, nor can their stipulation substitute for the hearing and bifurcation determination by the court. *Pastuszek, supra.* The entire process, including the discretion to be exercised by the court, would be supplemented by the stipulation. The only exception in the Divorce Code, to the required proceeding (complaint in divorce, claim for alimony and equitable distribution, Order of bifurcation, decree) is an agreement by the parties on the division of property and/or alimony (section 401(e)(2)), which the court may then adopt and incorporate in the decree. *Hollman v. Hollman,* 347 Pa.Super. 289, 500 A.2d 837 (1985); *Tokach v. Tokach,* 326 Pa.Super. 359, 474 A.2d 41 (1984).

In contrast to the majority view, which would appear to attain a just result, albeit by impermissible means, my view would appear to be harsh. However, never has the addage, bad cases make bad law, been more appropriate.

The approach espoused by the majority confuses the laws of judgment, jurisdiction and procedure and makes exceptions for foreign decrees and procedures which would not be permitted for domestic cases. It encourages migratory divorce because of the confusion engendered. A local domiciliary should not be able to escape the consequence of Pennsylvania law by stepping across a state line, and he and his decree should not be accorded legality simply because he does so. *Williams v. North Carolina II, supra.*

Conversely, two domiciliaries should not be permitted to submit themselves to a foreign jurisdiction and then call upon Pennsylvania courts to contest that jurisdiction's law and procedures or permit the foreign court to alter Pennsylvania law and procedures in order to accommodate a party who is dissatisfied with the results of a foreign procedure. Pennsylvania law does not deny the parties their day in court, it simply restricts remedies available. Partition is available, equitable distribution is not; alimony is available if claimed in Nevada but not if the decree doesn't provide for it.

While section 401(c), which provides:

(c) In all matrimonial causes, the court shall have full equity power and jurisdiction and may issue injunctions or other orders which are necessary to protect the interests of the parties or to effectuate the purposes of this act, and may grant such other relief or remedy as equity and justice require against either party or against any third person over whom the court has jurisdiction and who is involved in or concerned with the disposition of the cause.

would seem to apply, it can come into play only if the court has jurisdiction. When the case was properly before the court, it provided extensive remedies and recourse for the appellant. Once the decree was entered in Nevada, the remedies were restricted to partition and registration of the Nevada alimony decree pursuant to RURESA, 42 Pa.C.S.A. § 6776–6780 or 23 Pa.S.A. § 506, having to do with registration and enforcement of foreign support Orders.

*Sohmers* started on a straight course, *Coleman* would place us on a forty-five (45) degree tangent. If we would follow the law and apply the procedures so clearly mandated by the Divorce Code, in due time with the proper instructions to the bar and the courts, most of the difficulties would resolve themselves. To follow the approach outlined by the majority creates a morass of judge-made law and confusion in application of statutory law. If a different approach is needed, it should be left to the legisla-

ture or more likely to the Commission on Uniform Laws. I would affirm the Order of the lower court.

POPOVICH, J., joins in this dissenting opinion.